## ANDREW J. WALKER v. THE STATE.

1. ALIBI—REASONABLE DOUBT. A charge to the jury which assumes that no evidence of an *alibi* can avail the defendant (when the evidence of the State alone would be sufficient to convict), unless it produces conviction on the minds of the jury, that defendant was not present at the commission of the offense, but elsewhere, is error.

2. ALIBI—REASONABLE DOUBT. If the evidence of an *alibi* produces upon the minds of the jury a reasonable doubt concerning the truth of the facts constituting the guilt of the defendant, affirmed in the indictment, it would be sufficient to require an acquittal. Such a doubt might arise in their minds from the evidence tending to prove the *alibi*, and if so, that would be sufficient to render the evidence available to rebut the affirmative evidence for the State, without their minds ever having arrived at a conviction, to the degree of a moral certainty, as to the truth of the *alibi*.

3. CHARGE OF COURT. On a trial for murder, the following language was used by the judge in his charge : "If, therefore, the jury are satisfied, " beyond a reasonable doubt, from the testimony adduced, that the " means used *by the defendant* were likely to kill or do great bodily " harm," etc., " the jury will return their verdict for murder in the " first degree." *Held*, where the defense relied on was an *alibi*, that such a charge indicated the opinion of the judge as plainly, and much more injuriously than if it had been directly expressed, and was error, for which a judgment of conviction should be reversed.

4. CHARGE OF COURT—DYING DECLARATIONS. A charge of the court that dying declarations were " worthy of the same credit as other evidence," is objectionable, as a charge upon the weight of evidence.

5. CHANGE OF VENUE. When an affidavit for a change of the venue of a criminal cause is made, on the ground of prejudice, with supporting affidavits, as required by Article 2994 Paschal's Digest, it cannot be overborne by any number of counter-affidavits of a negative character.

6. CHANGE OF VENUE. The discretion given to a District Judge in deter-

mining the merits of an application for change of venue, is a judicial, and not a personal discretion, and his action may be revised by this court on appeal.

APPEAL from Galveston.   Tried below before the Hon. Sam. Dodge

A little after dark on Sunday evening, the 19th day of May, 1872, Green W. Butler and his family had finished their supper, at the residence of Butler, on Clear Creek, in Galveston county.

Green Butler then walked out of the room in which the family had taken tea, upon the gallery of his house, and while there standing, some persons rode up in front of the house and gallery, and stopped outside of the yard gate, about thirty or forty feet from the house, and asked if they could get supper, to which Butler replied, " Alight; certainly."   Butler then walked out to the gate, and two persons who had dismounted remained outside of the gate until Butler reached the same, and then one of them immediately shot Butler with a pistol, in the breast, without further " parley," and Butler fell upon the ground as if dead, whereupon the two persons ran away on their horses.   Butler survived the shot about ten minutes, and then died ; but before he died, he told several persons who were about the house at the time, who it was that had killed him.

The evidence shows that Mrs. Annie Butler, the wife of the deceased, heard the question asked by the persons as they rode up, and as distinctly heard the reply, and also the shot that followed so soon as Butler could walk to the gate. Mrs. Butler testified that she ran immediately to the prostrate form of her husband, who was, when she reached him, supporting his head on his hand and elbow as he lay upon the ground.

She asked him if he was dead, and he replied, " Yes, Annie, " I am dead (or dying).   Andrew Walker killed me, and little " Isam was with them.   I did not know the other."   There were two other witnesses who heard this declaration repeated

two or three times—Joe White and Ebbie Lewis, the one being a visitor at the house, and the other an inmate of the family of Butler.

The evidence of these three witnesses discloses the fact, that before Butler died, and before he repeated the above declaration, he recognized every one around him, and asked to be turned from one position to another, in order to relieve his agony, and in all respects he acted as in his perfect senses after the fatal wound had been inflicted. "Little Isam," who was spoken of by Butler as being "with them," was a negro boy who was well known to Butler, as having been a long time in his (Butler's) employ; and he testified that it was true that he (Isam) was present at the time of the killing (or shooting), and that he saw a tall man (such as the appellant) pull out a pistol and shoot Butler, without any talk between any of the parties; and he saw another shorter man standing alongside of the one who delivered the shot. Isam's testimony indicates that he was there by a seeming accident. "Isam knew defendant well; would know him anywhere; saw the face of the man who fired the shot, and could not say that it was defendant."

Two or three witnesses corroborated the truth of Isam's evidence as to the fact that he (Isam) was there at the time of the shooting.

The court admitted the declarations, as within the rule under the statute.

Upon this. testimony the State rested the case against Andrew Walker.

It was testified for the defense that the two Walkers and Black were at the house of Mrs. Walker (mother of appellant), distant four and three quarters miles from Butler's; that they left Mrs. Walker's at half an hour before sunset, proceeding eastwardly in the direction of Summit, whither they were going; that "at sunset," about "sun-down," they reached Hugh Kelly's, on the way to Summit; that they remained half an hour at Kelly's; that from this point the distance to Summit is five and a half miles eastward, and to Butler's five and

three-eighths miles southward; that they left Kelly's "after sun-
"set;" that they were met at Kelly's bridge by Jerry Thorn-
ton (State's witness) "about dusk;" "met them at the bridge
"just at dusk;" that this bridge is about two hundred and
fifty yards eastward from Kelly's house, on the road to
Summit. Three men were shortly after seen by Bob Thorn-
ton passing his house. He swore: "It was just growing
"dusk when I saw three men riding by me slowly, side by
"side, talking, coming towards Summit in a walk." This
point is one and a quarter miles eastward from Kelly's house,
and four and a quarter miles from Summit, and about five
miles, by any feasible route, from Thornton's house to But-
ler's. It was in evidence that they were met half-way between
Kelly's and Summit by Lea, who had left the camp at Summit
"after sun-down," to go to Kelly's; that they spoke to him and
he knew them. They were riding in a walk. Not dark when
he met them. This point is distant from Butler's about six
miles, and from Summit about two and a half miles. It was
testified that they arrived at Summit, which is distant from
Butler's house six and five-eighths miles," about 8 o'clock,"—" it
"was not later than 8.15 o'clock, P. M." On the 19th of May,
the sun set at 6 50. The moon was full on the 21st of May.
It appears, from the testimony, that there was no unfriendly
feeling known to exist between the accused and the deceased.

The State then rebutted, by evidence showing that two per-
sons in male attire were seen, just before the murder, within a
short distance of Butler's residence, riding on horseback, in the
direction of Butler's house, one of them on Walker's dun horse,
as recognized by the witness, who knew the horse well, and
which was shown to be the same horse that Walker was riding
on that afternoon when last seen.

It was also in evidence, by the same witness, that the killing
was done in such time as it would have taken the two parties
to ride the distance from where seen to Butler's, and that the
shot and screams of the wife, thereafter, were heard by the
same witness who saw the two men.

It was further testified by two witnesses, that, since the murder, the distance from Butler's residence to the point (Summit) where Walker was seen after the murder, had been ridden on horseback, by a man weighing one hundred and sixty-five pounds, in twenty minutes by the watch, and that the horse on which the ride was made was not a race-horse, but one that had been used as a cow-pony.

Walker and Black, though severing on the trial, joined in an affidavit for a change of venue, which alleged that there existed in Galveston county, where the prosecution was pending, so great a prejudice against them that they could not obtain a fair and impartial trial. This was supported by the affidavits of three persons, as required by the statute. The State then filed the affidavits of forty-nine persons, who swore that they were satisfied there existed no such prejudice against the defendants as to prevent their obtaining a fair and impartial trial. The affidavits for the State, as well as for the defense, were to the effect that affiants were acquainted with public sentiment on the subject in Galveston county; but no effort of a direct character to attack the credibility of the parties who made the affidavits for defendants was made, nor did any of them making counter-affidavits swear positively to the absence of such prejudice as would prevent a fair trial.

Verdict of "Guilty of murder in the first degree, and penalty affixed as death."

*Willie & Cleveland* and *Arthur W. Andrews*, for appellant, insisted:

*First.* That the counter-affidavits did not negative the existence of great prejudice as a fact.

*Second.* That the court erred in requiring that the evidence of an *alibi* should be convincing to the mind of its truth before an acquittal could be had, if the State's evidence had made out the case, citing Dorsey *v.* The State, 34 Texas, 658; French *v.* The State, 12 Indiana, 673; Pilkinton *v.* The State, 19 Texas, 214.

*Third.* That the court erred in instructing the jury that if the statements made by deceased were made in conformity with the rules given in the charge, they were "worthy of the "same weight as other evidence," as charging on the credibility of a witness, and upon the weight of evidence; citing Lambeth v. The State, 1 Cushman, 358; 17 Illinois, 17; 1 Greenleaf on Evidence, Sections 160, 161, 162; 2 Starkie on Evidence, 366, 367.

*Fourth.* That the charge assumed, as true, facts the jury should have found, citing Kimbro v. Hamilton, 28 Texas, 566; Andrews v. Marshall, 26 Texas, 215; Blankenship v. Douglass, 26 Texas, 228, 229; Cobb v. Beall, 1 Texas, 346, 347; White v. The State, 13 Texas, 133; Brown v. The State, 23 Texas, 202.

*M. C. McLemore,* for the State, contended:

*First.* That there was no error in refusing to change the venue, Winkfield v. State, and Cotton v. The State, 32 Texas.

*Second.* That the charge, on the whole, was as favorable to defendant as the facts would allow, and the mere fact of any particular part not conforming to law in the abstract, affords no reason why the court should reverse, citing Henderson v. The State, 12 Texas, 531; Robinson v. The State, 15 Texas, 311; O'Connell v. The State, 18 Texas, 343; Monroe v. The State, 23 Texas, 216; Daniels v. The State, 24 Texas, 389; Johnson v. State, 27 Texas, 766.—Continuing—

The truth is, as shown by the record, that the jury were obliged to convict Andrew Walker unless they believed that Mrs. Butler, Joe White, and Effie Lewis were deliberate perjurers, because they each swore that Green Butler told them (whilst perfectly sane, and they stated how they knew he was sane to the satisfaction of the court and jury) that Andrew Walker had killed him, and they testified as to the *manner* of the killing, as they saw it themselves. Unless, forsooth, it be argued that Green Butler went from this world into eternity with a falsehood on his lips, because it is not possible, under the proof, that he was mistaken. And then, to talk about a

charge on the weight of that evidence, as having anything to do with the verdict, and that, too, when the court say that it is only entitled to the same credit as other evidence, and afterwards tell the jury that they are the judge of the credibility of all the evidence, and, at the instance of the defendant, specially admonish the jury of the peculiar infirmity of men who are dying, and who may only think a thing to be true when it really is not.

Read the charge as given at the request of defendant: " They " (the jury) are to consider the circumstances under which the " declarations of the deceased were made, and what was the " condition, mental and physical, of the deceased at the time, " whether he was in a condition to know the facts, and whether " they have been disclosed as they really were, or only as " seemed to him to be; and, in coming to your conclusion, will " weigh all the facts, as well those proved by the defendant as " those proved by the State, and if, from the testimony ad- " duced by the State or by the defendant, or of all taken " together, a reasonable doubt arises in your mind, spring- " ing out of the testimony as to the identity of the person " or persons engaged in the homicide, then you should give " the defendant the benefit of the doubt and find him not " guilty.

" *Third.* It is a rule of evidence that dying declarations are " to be admitted without the sanction of an oath taken by the " deceased, are to be judged of and weighed by the jury, with " all the other in the case, and if upon the whole testimony " there arises out of it a reasonable doubt as to the identity of " the person or persons committing the homicide, then it would " be your duty to acquit him."

And again. " That the burden of proof is at all times upon " the State, upon the plea of not guilty, to establish the guilt " of the accused beyond a reasonable doubt, and if, in consid- " ering all the facts in proof, as to time, distance, and locality, " and all other facts in proof, whether made by the State or " defendant, there arises in your mind a reasonable doubt as

" to the fact of the presence and participation of Andrew J.
" Walker in the homicide, then you should acquit him."

And in the face of the general charge, and the foregoing
charges as asked by defendant, this court is asked to reverse
this cause on account of isolated parts of the general charge
on the same subjects!

ROBERTS, C. J.　The appellant was indicted for the murder
of Green Butler in the county of Galveston, tried, convicted
of murder in the first degree, and adjudged to be hanged, as
the penalty awarded.

We are of opinion that there are several material errors in
the proceedings upon the trial, for which the judgment must
be reversed.

One of the highest and safest securities in the preservation
of rights is a substantial adherence to the rules of law pre-
scribed for the judicial proceedings in ascertaining and ad-
judging the legal consequences of their infraction.　Whatever
may be the facts exhibited on the trial of a criminal cause, if
the rules of proceeding that have been adopted as necessary to
elicit and establish the truth of the issue, are broken down
and disregarded, there is no reliable certainty in the result.
Hence, without considering what, in our opinion, should have
been the verdict upon the facts, as presented in the record, it
is necessary to see how far such verdict might have been
tainted, by the infusion into its formation of errors of law, to
the prejudice of the defendant.

Our Code requires that in every case of felony the judge
shall, whether asked to do so or not, " deliver to the jury a
" written charge, in which he shall distinctly set forth the law
" applicable to the case; but he shall not express any opinion
" as to the weight of evidence, nor shall he sum up the testi-
" mony." (Paschal's Digest, Article 3059.)　It further pro-
vides that new trials shall be granted in cases of felony,
" where the Court has misdirected the jury as to the law, or
" has committed any other material error calculated to injure

" the rights of the defendant." (Paschal's Digest, Article 3137.)

The charge of the court in this case develops the principles of the law of homicide, from murder in the first degree down to justifiable homicide, with all of the intermediate degrees, so that the charge itself does not indicate with any certainty what was the character of the transaction under investigation. This superfluity might be, and often is, harmless, where it appeared evident that it was not calculated to mislead, or prejudicially confuse the minds of the jury in the discharge of their duty. But where the court misdirects the jury as to the law relating to the material facts which are involved in the transaction, as shown by the evidence, then such error enters into the verdict as one of the elements of its production.

Without any critical examination of the numerous irrelevant charges, and of the injurious effects they may have been calculated to produce, it will suffice to notice those erroneous charges that applied directly to the facts of the case.

And in order to appreciate their full force, it may be proper to state, in advance, that the evidence showed without any dispute or doubt that Green Butler was shot and killed in his own yard by some person, the act being planned beforehand and deliberately performed without any known justification, excuse, or palliation—a plain case of assassination—and the only fact in dispute as exhibited in the evidence was, whether or not Andrew J. Walker was the man who shot him. The State assumed by the charge in the indictment that he was the man. He, by his plea of not guilty, said he was not. The affirmation of the issue and the burden of the proof of that fact was on the State.

The dying declarations of Butler identified Walker as the man, to rebut which evidence was adduced tending to show, and for the purpose of showing, that he was somewhere else and not at Butler's at the time of the killing.

In reference to the issue thus presented by the evidence, the court instructed the jury as to the rules of law under which

dying declarations were admissible, as specified in the Code, and added thereto, that "if the statements made by the de- "ceased were made in conformity with these rules of law, then "it is competent testimony, and worthy of the same credit as "other evidence." In the same connection he charged them that "an *alibi* is a species of defense sometimes relied upon in "criminal cases, and when an accused relies upon it, the affirm- "ative of the issue rests with him ; it becomes incumbent upon "him to maintain it to the satisfaction of the jury, if he would "enjoy its benefits. It is impossible to convict an accused if "he was at the time in another and different place than the one "charged in the indictment. The burden of proving that he "was elsewhere is cast upon him. If the defendant has adduced "evidence to the entire satisfaction of the jury, that on the night "the murder is charged to have been committed, that he was at "so great a distance therefrom, or the time was such as to make "it impossible for him to have committed the offense, then the "defendant must be acquitted. This is a fact for the jury to "decide from all the testimony elicited in the cause."

This charge was well calculated to convey the idea to the jury that the case of the State was made out by the dying declarations "worthy of the same credit as other evidence," subject to being defeated alone by the defendant proving, beyond a reasonable doubt, or to a moral certainty, or "to their "entire satisfaction," that it was not possible for Walker to have been at Butler's when he was killed. It makes an *alibi* a defense in the nature of a plea of confession and avoidance in a civil suit; whereas it is not a defense at all in any other sense than as rebutting evidence tending to disprove the fact alleged in the indictment, that Walker killed Butler, the burden of proving which allegation rests on the State throughout the whole trial, and cannot be changed, so far as the action of the jury upon the evidence is concerned, by anything short of an admission upon the record, if such a thing would under any circumstances be a proper proceeding. For notwithstanding the failure of a plea of *autrefois convict*, the law does not de-

24

bar a trial on the plea of not guilty. The obvious error in the charge consists in furnishing the jury with an artificial rule as to the degree in the strength of their conviction (and that the highest possible degree), concerning the proof of the *alibi*, before it should be allowed to have any influence on their minds in disproving the fact that Walker was the person who shot and killed Butler; whereas the rule of law is that such evidence of an *alibi* should only be of such weight as to produce upon the minds of the jury a reasonable doubt of the fact affirmed by the State, that Walker was the man who shot Butler. Such a doubt might arise in their minds by the evidence tending to prove the *alibi* before they had arrived at a moral certainty as to the truth of the *alibi*, and if so, that would be sufficient to render the evidence available to rebut the affirmative evidence for the State, without their minds ever having arrived at a conviction, to the degree of a moral certainty, as to the truth of the *alibi*.

For the purpose of correcting the error of this charge, the defendant's counsel asked the court to charge the jury, " that " if from the evidence adduced in this cause, there arises in " your minds a reasonable belief that the accused was else- " where than at the place of the homicide, at the time of its " commission, then you should acquit him." The refusal of the judge to give this charge shows clearly that in his opinion a reasonable belief was not a sufficient degree of conviction of the truth of the *alibi*, but that it must fasten upon their minds to the degree of a moral certainty, or, in his own language, it must be established to their " entire satisfaction."

Although this charge thus asked may not have furnished the exact rule upon the subject, it served the purpose of calling the court's attention to it, and of inviting a reconsideration and reformation of the erroneous charge.

Another objection to the charge is in the inferential assumption that Walker was the person who killed Butler, to be found in several parts of the charge, and especially in the conclusion of it, which is as follows: " If, therefore, the jury are

" satisfied, beyond a reasonable doubt, from all the testimony
" adduced, that the means used *by the defendant* were likely to
" kill or do great bodily harm, and the circumstances connected
" with the homicide manifested a fixed design to kill, although
" it may have existed but for a moment, and it is not otherwise
" shown that the act was the result of rash, sudden impulse or
" passion, then the jury will return their verdict guilty of
" murder in the first degree, and assess the punishment to be
" either death or punishment in the penitentiary for life."

It often happens that facts are assumed as true, in a charge,
without any prejudice to the accused. For instance, in this
case, had it been assumed that Butler was killed by a pistol
shot, it could not have injured the defendant, for that was a
fact about which there was no question or doubt, and no effort,
as shown by the evidence, to controvert it. It is very differ-
ent where the charge is so shaped as to take it for granted
that the defendant is the person who did the act of shooting,
when that is the only fact in controversy, as exhibited in the
evidence. Being placed prominently in the conclusion of the
principal charge, and being applied to this case directly, in
connection with such facts as would be sufficient to make the
killing murder in the first degree, by the defendant, none of
which additional facts were in controversy at all, it was well
calculated to injure the rights of the defendant." (Paschal's ·
Digest, Article 3137.) The expression, that if the jury are
satisfied " that the means used by the defendant were likely
" to kill," etc., " the jury will return their verdict of murder
" in the first degree," indicated the opinion of the judge as
plainly, and much more injuriously than if it had been directly.
expressed, under all the circumstances of the case.

The charge of the court, that dying declarations were
" worthy of the same credit as other evidence," was also ob-
jectionable as a charge upon the weight of evidence. The rule
of law is, that such declarations, though not under oath, are
admissible evidence; but there is no rule of law that deter-
mines their weight in comparison with other evidence, as the

judge undertook to tell the jury in this case. The judge also instructed the jury as to the weight and force of circumstantial evidence under particular contingencies.

It is contended, that the subsequent charges given to the jury by the judge, at the instance of defendant's counsel, effaced the erroneous impression and corrected the error of these charges. In three charges thus given, it was substantially expressed, though each time in different language, that if from all the evidence there was a reasonable doubt as to the presence and participation of Andrew J. Walker in the homicide, he should be acquitted.

This did not remove from the minds and consciences of the jury the bar and limitation imposed upon them by the artificial rule, that they must be entirely satisfied that Walker could not possibly have been at Butler's at the time of the homicide before the evidence of the *alibi* should be allowed to raise a reasonable doubt in their minds. The artificial rule as to the necessary weight of evidence took away the free action of their minds in forming the doubt from the whole of the evidence. The minds of the jurors were trammeled with a condition precedent in the mental process, without which there could no doubt be allowed to arise in their minds in considering the whole of the evidence.

There is also no certainty that these additional charges were calculated to remove the impression made upon the jury by the opinion of the judge as to the weight of the evidence, deducible from his assumption of the fact in his charge that Walker was the person who killed Butler. That opinion of his still helped the jury to resist the doubt from arising in their minds, if they were predisposed to resist it; or at any rate, in proportion to its influence upon them, it tended to prevent the doubt from arising in their minds, and the support given by it may have turned the mental scales against the defendant, as to the reasonable doubt. There are artificial rules of evidence established by law which restrain the jury from the free use of the mind in forming a verdict, except on a condition pre-

cedent, as, in the case of perjury, they cannot find the defend-
ant guilty, although satisfied fully of the guilt, unless their
belief is founded on the testimony of two, or what is equal to
two witnesses.    But the law allows no such artificial rule as to
what degree of proof shall exist before a reasonable doubt can
be allowed to arise in and control the minds of jurors in the
trial of a criminal cause.  (Paschal's Digest, Article 3108.)

A charge upon the weight of evidence is not necessarily a
ground for reversal, unless it appears, by a bill of exceptions,
that it was objected to at the time it was given, so as to enable
the district judge, as we may presume, to correct it, or with-
draw it from the jury if he should think proper to do so.
(Paschal's Digest, Articles 3059 and 3067.)

If the defendant fails to make such exception, he may still
make it a ground for a motion for a new trial, and then if it
appears that such charge upon the weight of evidence is so
flagrant, and on a matter in issue of vital importance, so as to
make it not only an error, as it must be—being contrary to
law—but also a " material error calculated to injure the rights of
" the defendant," then it will be a good ground for a new trial,
the refusal of which, if made on such ground, will authorize
this court to reverse the judgment of conviction in a case of
felony. (Paschal's Digest, Article 3137.)  When such error is so
material as to require a reversal must be a matter of sound
discretion and judgment, as there can be no fixed rule applica-
ble to the facts of every case.   In this case, the two most ma-
terial facts were, the truth of the dying declarations, the weight
of which as evidence the judge defined without any legal
authority for doing so ; and the fact that Walker was the man
who shot Butler, which the court inferentially assumed as an
established fact.   Surely this must be a most material error, if
it be true that the Constitution and laws of this State guarantee
to every man an impartial trial by a jury of the country,
according to the law of the land.   If the judge may directly or
indirectly give his opinion to the jury as to the weight they
should attach to particular evidence, and assume facts to be

proved that are contested by the evidence, and thus infuse into the minds of the jury his judgment as to the material matters in controversy, the conclusion arrived at is not their own verdict.

The law of this State, as contained in the Code, is as plain as it can be written in separating the duties of the judge and of the jury, and in defining exactly the respective duties of each in a criminal trial, all in harmony with and to carry out that provision of our Constitution which declares that "the right of "trial by jury shall remain inviolate." (Paschal's Digest, Article 1101.)

"The only mode of trial upon issues of fact in the District "Court is by a jury of twelve men, unless in cases specially "excepted." (Paschal's Digest, Article 3007.)

"The jury are the exclusive judges of the facts in every crim-"inal cause, but not of the law in any case. They are bound "to receive the law from the court and be governed thereby." (Paschal's Digest, Articles 3058, 3108.)

On the other hand, the judge is required, in cases of felony, to deliver to the jury a written charge, in which he shall distinctly set forth the law applicable to the case, and he is positively prohibited from expressing any opinion as to the weight of the evidence, from summing up the testimony, from discussing the facts, or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury; which closes with the emphatic expression: "It is his duty to state "plainly the law of the case." (Paschal's Digest, Articles 3059, 3060.)

The law contemplates that each branch of the court will be competent to the task imposed—the judge to charge the law, and the jury to weigh the evidence and find the facts—and that each will strictly confine itself within its prescribed province in the administration of the law.

If the jury may disregard the charge of the judge as to the law given them, and if the judge may assume material facts in issue to be proved, charge upon the weight of evidence, in-

struct the jury as to the relative force of the different kinds of evidence, and as to the circumstances under which one kind may be equal in weight to another, and as to the proper processes of considering evidence in order to arrive at correct conclusions, we will have presented a trial in form, but judicial anarchy, or judicial tyranny in substance, may be the result of the trial, to the prejudice of the defendant or of the State.

Another ground of error complained of by the defendant is in the action of the court in overruling the application for a change of venue, which is made to appear in a bill of exceptions, as it should be done, embracing all of the proceedings as well as the action of the court thereon. Walker and Black being indicted together, joined in the affidavit for a change of venue, " because there exists in Galveston county, wherein this " prosecution was commenced, and is now pending, so great " prejudice against them that they cannot obtain a fair and im- " partial trial."

This is supported by the affidavit of three persons, residents of said county, fully as required by the terms of the Code. (Paschal's Digest, Article 2994.)

In opposition to this a counter-affidavit was filed signed by forty-nine persons, who swear that they are satisfied there is no such prejudice against said defendants as to prevent their obtaining a fair and impartial trial.

Those sworn, both in support of and in opposition to the change of venue, state, that they are acquainted with the public sentiment upon the subject in Galveston county.

The Code provides that " a change of venue may be granted " on the written application of the defendant, supported by his " own affidavit and the affidavit of at least two credible per- " sons, residents of the county where the prosecution is insti- " tuted, for either of the following causes, the truth and suf- " ficiency of which the court shall determine," etc. This court has decided that the District Court may admit counter-affidavits, when deemed necessary in determining the facts thus submitted to its judgment, in Winkfield v. The State. Reference

is here made to the case cited, for the general views of the court upon the subject, without repeating them here. We think the discretion given to the District Judge in determining the merits of the application is a judicial and not a personal discretion, and that therefore his action may be revised by this court on appeal, when properly presented by a bill of exceptions, as is done in this case. It may be very difficult to lay down in advance any general rule by which this court would be governed in passing upon the judgment of the court below, further than that we should presume it to be right, as in other cases, unless the contrary is made to appear, with reasonable certainty, in the record. If, however, a mode has been adopted and alone relied on, in determining the credibility of the persons supporting the application, and the truth and sufficiency of the cause set out for the change of venue, is not competent to attain the object of the investigation, and will, if permitted, have the effect to defeat the object of the law itself, this court may well revise and reverse the action of the court below, founded upon such mode of proceeding.

This case falls under that rule. Supposing the three persons supporting the defendant's application to be credible, which we must, as their credibility was not attacked, the law had been complied with, which, *prima facie*, gave him the right to have the venue changed. If that is allowed to be resisted and overborne by counter affidavits of a negative character, such as that in this case, made by a number of persons, the determination of his right to a change of venue would descend into a struggle between him and the District Attorney to get the greater number of persons to swear for and against the application; and the stronger the prejudice against him the more certain would be his defeat if thus determined.

If the persons supporting the application are not credible persons, or if the prejudice as sworn to by them does not exist, it may be shown by the proof of affirmative facts, as well.as by negative evidence, as was done in the case above cited of Winkfield v. The State. (Texas Reports, 40.) In that case, it was

shown that the persons who made the affidavit in support of the application were obscure persons, not acquainted with the public sentiment; that the case had attracted but little attention, the parties being unknown to the mass of the people in the county; that there were a large proportion of the jurors of the county who had most probably never even heard of the transaction at all. Such affirmative facts being proved, in addition to the negative evidence, as in this case, this court sustained the action of the court below in refusing the application for a change of venue. We are of opinion that the court erred in overruling the application for a change of venue, on account of the mode which was alone adopted in determining the issue on it. The effect of this, however, will only be to indicate a proper mode of investigation, should another similar application be hereafter made in the District Court.

Without undertaking to define the different ways in which this matter may be properly tried and determined, it is now only decided that the mode adopted in this case is not a proper one, so as to enable this court to justify the refusal of the application, as made and supported for the change of venue.

We are of opinion that the court erred in overruling the aplication for a change of venue, in the charge to the jury, and in overruling the motion for a new trial, for which the judgment must be reversed and the cause remanded.

Reversed and remanded.