[No. 1889.]

## W. C. Cunningham v. The State.

1. PRACTICE.— CONTINUANCE is properly refused if it be sought to secure testimony which, in the light of the evidence adduced, is not probably true.

2. THEFT — EVIDENCE — FACT CASE.— See the statement of the case for evidence *held* sufficient to establish the identity of the accused, and to support a conviction for theft.

3. SAME — SURPRISE.— The primary remedy against a surprise by reason of the self-contradictory testimony of a witness is by seeking a continuance, or a postponement of the trial to a subsequent day of the term. But see the opinion for evidence *held* not to operate as a surprise.

4. SAME — CHARGE OF THE COURT — CIRCUMSTANTIAL EVIDENCE.— This court will not reverse a judgment of conviction because of an erroneous charge upon the weight of circumstantial evidence, in the absence of a bill of exceptions or a showing of manifest prejudice to the rights of the defendant.

APPEAL from the District Court of Red River. Tried below before the Hon. D. H. Scott.

The conviction in this case was for the theft of a mare and colt, the property of C. E. Fowler, in Red River county, Texas, on the

30th day of April, 1885. A term of five years in the penitentiary was the penalty assessed.

Haywood Fowler, the first witness for the State, testified that early on the morning of April 30, 1885, C. E. Fowler turned his several horses upon the range, the ground being too wet to plow on that day. All of the animals, save the mare and the colt in question, came back to the house about 9 o'clock. The witness proceeded to the range immediately to look for the missing animals. He easily found the tracks of the mare, which he knew well. He followed those tracks, the tracks of the colt being visible occasionally, in a southwest direction, to and across the creek, and through the bottom, to a point about eight miles south of Clarksville, where the Clarksville and Mount Pleasant road was reached at the bridge across Cuthand's creek. The tracks thence traveled the road about a quarter of a mile, when they left it, going a little west of south to a cabin occupied by a negress named Aggie Smith. From the cabin the tracks turned back nearly north, in which direction they traveled a short distance, and circled back in a nearly southwest direction and took a course nearly parallel with the public road. It was evident from the courses taken by the tracks that the various settlements in the country were being avoided. Witness was overtaken by dark and abandoned the trail where it left the road three or four hundred yards beyond Edmondson's place. On the following Sunday witness went to the house of Calvin Holt, about twenty-two miles southwest of Clarksville. About a mile west of Holt's the witness found the tracks of the mare and colt, going west. Witness never heard of the colt after it left Holt's, but heard of the mare at Blossom Prairie, and afterwards in Sherman, Texas. Neither of the animals were ever recovered. The mare was chestnut sorrel in color, was about sixteen hands high, six years old, and had a flax mane and tail and three white feet. The colt was a lighter sorrel.

C. E. Fowler corroborated the first witness as to the disappearance of the mare and colt, which animals, he testified, belonged to him, and were taken from his possession without his knowledge or consent. He described the animals as did Haywood Fowler, except that, according to this witness, the mare had but two white feet, and the colt a blaze in the face in the shape of a cross. At the point on the range where he discovered the tracks of the mare, he found the track of a man's boot or shoe, about a five or six in size. Such appeared to be the size of the defendant's foot.

W. J. Duckett testified, for the State, that he lived eight or nine

miles east from C. E. Fowler's place in Red River county, Texas. The defendant came to his house on Saturday between the third and fourth Sundays in April, 1885, and remained until early on Wednesday morning, when he left. He came back to the witness's house two or three weeks afterwards. Witness knew nothing about the taking of Fowler's mare and colt.

Bob Criner testified, for the State, that he followed the tracks of the mare and colt from the range to Donaho's ranche, on Boggy creek. The tracks crossed the creek at an old road. Before reaching the point of crossing, the witness saw where some one had pushed the colt down a steep embankment into the creek. A man's track, five or six in size, was found at that point. From that point the witness followed the trail with its meanders to the negro cabin, and then being overtaken by night abandoned it.

Aggie Smith, colored, testified that she lived on Mr. Edmondson's place, about eight miles south of Clarksville, just across Cuthand's creek, and three or four hundred yards from the Clarksville and Mount Pleasant road. Some time in the spring of 1885, a white man came to witness's house, riding bareback on a chestnut sorrel mare. A colt, lighter in color, followed the mare. The man inquired for stray horses. He wore no coat, but had on a vest, the breast of which was dark spotted, and the back blue in color. He wore a pair of fine boots or shoes, and a red colored hat. The hat was not made of straw. Shortly afterwards — a few days — another man came to witness's house, hunting the mare and colt. The defendant on trial was the identical man who rode the mare up to the witness's house. He left, going off in pretty much the same direction from which he came. When, in May or June, 1885, witness designated a deputy sheriff as the man who rode the mare up to her house, she was greatly excited, and was therefore mistaken. The witness knew positively that the defendant on trial was the man who rode the mare up to her house.

William Herrell testified, for the State, that he lived on Sulphur creek, about eighteen miles distant from Clarksville. The defendant, riding a sorrel mare, bareback, came to where the witness was at work in his field, one evening late in April or early in May, 1885. The mare was followed by a six weeks' old colt, lighter in color than the mare. The defendant told witness that he had been fishing down on Sulphur, and had gone into camp with his wagon, but that one of his horses escaped, which accounted for his riding his mare bareback, and that he was then in quest of his missing horse. He told witness that he lived at Mr. De Berry's place on Blossom Prairie, and

asked witness to loan him a saddle for a day or two, to help him out of his then dilemma. Witness being well acquainted with Mr. De Berry, and believing the defendant's statements, loaned him the saddle, which he had never seen since. Defendant had on no coat, but wore a bluish vest, checked pants, fine boots or shoes, and a reddish brown, low, stiff-brimmed hat. The hat was not of straw.

Calvin Holt testified, for the State, that he lived in Red River county, Texas, about twenty-two miles southwest of Clarksville. About dark on the last day of April, 1885, the defendant, riding a chestnut sorrel mare, which was followed by a colt of lighter sorrel color, came to his house and remained over night. The mare had two white feet, and the colt a blaze in the face in the shape of a cross. Witness offered to trade for the mare, but the defendant declined, saying that he had just been breeding her to a jack owned by Mr. Joe Garland, who lived eight or ten miles east of Clarksville. Defendant at that time wore a gray coat, a dark or bluish colored vest, and a red or brown hat of material other than straw. He said that he wanted to get across Sulphur creek. Witness told him the creek was too high to be crossed except at Parmer's bridge, which he did not think could be reached because of high water in the bottom. He left witness's house on the next morning, and went west. A few days later Hayward Fowler came to witness's house, hunting the mare and colt. Witness told him about the defendant staying at his house, and Fowler went off in the direction previously taken by the defendant.

Robert King testified, for the State, that he was the proprietor of a livery-stable in Sherman, about one hundred miles west from Clarksville, on a line of railway. On the 3d or 4th day of May, 1885, the defendant came to the witness's stable, riding a sorrel mare, about fifteen hands high. When defendant arrived at the stable, about noon, the mare showed hard riding, and that she had recently borne a colt, inasmuch as she was still in milk. She had white feet. Defendant remained about Sherman for a day or two, but witness did not know what disposition he made of the mare. He wore a light colored coat, a blue vest and a red or brown hat. It was not a straw hat. A person, by hard riding, could travel horseback from Clarksville to Sherman in two days. Defendant paid his bills so far as witness knew. Witness was satisfied that the defendant was the man who brought the mare to his stable as described, though it was possible he was not.

Willis Payne hostler at King's stable in Sherman, corroborated

King as to the man bringing the mare to the stable on May 3 or 4, 1885. That man though, the witness thought, was somewhat larger and more sunburned than defendant. The man's dress was correctly described by King. The man sold the mare on the morning after his arrival, for about $30, taking an old open-faced silver watch in part payment. The animal was well worth fifty or sixty dollars.

Jo. Garland testified, for the State, that he lived eight or ten miles east of Clarksville, and was the only man of the name in Red River county. He had never owned nor stood a jack anywhere in his life, and, of course, no jack of his ever served a mare for defendant. The State closed.

T. C. Crawford testified, for the defense, that the defendant ate supper at his place in Bonham on the night of Tuesday or Wednesday late in April or early in May, 1885. May day was celebrated, the witness thought, on the previous Friday. Defendant got to witness's place after supper, and said that he was going either to Sherman or Dallas, and witness loaned him a dollar, which within a week or two defendant repaid in Bonham. Witness did not know how or when defendant came to or left Bonham.

T. C. Saunders testified, for the defense, that defendant, very late in April or very early in May, 1885, in Bonham, paid witness $5 due on house rent. This, the witness thought, was before May day. At all events, May day fell in the same week. He said something about going or having been to Sherman.

W. C. Saunders testified that he saw the defendant in Bonham on Tuesday or Wednesday of the first week in May.

W. J. Duckett testified, for the defense, that defendant's wife came to his house on the third Sunday in April, 1885, and the defendant on the following Friday. He left on either the Tuesday or Wednesday following, wearing a straw hat. Annona, four miles distant from his house, was the nearest railroad station to which the witness lived.

Angie Cunningham testified that defendant left Duckett's house about sunrise in the morning, wearing a straw hat.

S. R. Stiles testified, for the defense, that the express train from Texarkana to Sherman, passing through Annona and Bonham, was due at Clarksville at twenty minutes past 10 o'clock, A. M. Freight trains passed almost hourly during the busy season. Witness did not know at what hour the express going west was due at Bonham.

The continuance was asked to secure the testimony of two wit-

nesses to the fact that they saw the defendant in Bonham, about eighty miles distant from the place of the alleged theft, on the day that it is charged to have been committed.

The motion for new trial raised the questions discussed in the opinion.

*C. A. Worley*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. Three grounds are urged for a reversal of the judgment in this case, to wit: 1. The overruling of defendant's application for continuance. 2. Failure of the proof of identity of defendant. 3. The overruling of defendant's motion for a new trial, as to the ground of surprise at the testimony of the witness W. J. Duckett.

It was the purpose of the application for continuance to obtain the testimony of the three several witnesses named, to sustain the defense of *alibi*. From the testimony which was had at the trial we do not believe that defendant's statements as to what he could prove by said witnesses are probably true, or that, if said witnesses should make the statements, that they would be probably true.

As to proof of identity of defendant, whilst it is true that the witnesses who testified to seeing him in possession of the stolen animals had never seen or known him before, still two or more of them swear most positively to his identity, and other witnesses, some of them his own, place him, on the day before the property was stolen, in the neighborhood of the place where the theft was committed. Ample proof is found in the record to support the finding of the jury as to his identity.

Defendant claims that he was taken by surprise at the testimony of the witness W. J. Duckett as to the time when he, the defendant, left the house of said witness; that at the examining trial said witness had testified that it was on Wednesday, the 29th day of April. When we recur to the evidence of this witness as shown in the statement of facts, we find he testified " defendant came to my house on Saturday, between the third and fourth Sunday in April last. He staid there until the next Wednesday morning, when he left." There is no conflict between this and his previous statement at the examining trial, as far as we can see.

But, suppose defendant had been taken by surprise by the testimony, then his remedy is pointed out by the statute, and he should

have availed of that, and not have waited to seek relief where it could not be obtained, on his motion for a new trial. He should have asked for a continuance or postponement to some future day of the term, to have obtained the evidence shown by the supporting affidavits to this ground of his motion for a new trial. (Code Crim. Proc., art. 568; *Childs* v. *The State*, 10 Texas Ct. App., 183; *Cresswell* v. *The State*, 14 Texas Ct. App., 1; *Higginbotham* v. *The State*, 3 Texas Ct. App., 447; *Walker* v. *The State*, 7 Texas Ct. App., 245; *Webb* v. *The State*, 9 Texas Ct. App., 490.)

No exception was taken and saved to the charge of the court. Upon the weight of circumstantial evidence it was erroneous, and the error would have necessitated a reversal had it been excepted to at the time. (*Harrison* v. *The State*, 8 Texas Ct. App., 183; *Harrison* v. *The State*, 9 Texas Ct. App., 183; *Walker* v. *The State*, 13 Texas Ct. App., 618.) Not having been excepted to, and it not being manifest that the defendant was injured thereby, we do not feel called upon to reverse the judgment for this error alone. (*Post* v. *The State*, 10 Texas Ct. App., 580; *Maddox* v. *The State*, 12 Texas Ct. App., 429; *Walker* v. *The State*, 42 Texas, 373; *White* v. *The State*, 19 Texas Ct. App., 343.)

We are of opinion that the evidence is amply sufficient to support the verdict and judgment, and, there being no reversible error apparent of record, the judgment is affirmed.

*Affirmed.*