### JAMES GALLAHER V. THE STATE.

*No. 2669. Decided June 28. Motion for rehearing overruled December 7.*

1. "**Malice.**"—**Cases Approved.**—Charge of the Court defines malice to be "the intentional doing of a wrongful act to another without legal justification or excuse." *Held,* sufficient; citing with approval McKinney's case, 8 Texas Ct. App., 626; Harris's case, Id., 90; Lander's case, 12 Texas, 481.

2. **Same—Evidence.**—The indictment alleges that the murder was committed by the use of both a pistol and a knife. Under this allegation it was sufficient to prove the use of either means, and the court did not err in charging the jury that if defendant "killed the deceased by shooting her with a pistol *or* cutting her with a knife," etc.

3. **Same.**—It was not necessary, under the whole proof in the case, for the State to specifically prove, or for the court to charge that the weapon used was a deadly one.

5. **Same—Presumption of Innocence—Reasonable Doubt.**—The trial court instructed the jury as follows: "The defendant is presumed by the law to be innocent until his guilt is established by legal evidence, to the satisfaction of the jury beyond

a reasonable doubt, and unless the evidence so satisfies you in this case of the guilt of the defendant of murder of the first or of the second degree, then you will find him not guilty." *Held*, correct and sufficient.

5. Same—Circumstantial Evidence.—The charge of the court on circumstantial evidence reads as follows: "In order to warrant a conviction of a crime on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proven by competent evidence beyond a reasonable doubt; all the facts (that is, the facts necessary to the conclusion) must be consistent with each other, and with the main fact sought to be proved; and the circumstances taken together must be of a conclusive nature, leading on the whole to a satisfactory conclusion, and producing in effect a reasonable and moral certainty that the defendant, and no other person, committed the offense charged; and unless the evidence does so, you will acquit the defendant. But if the evidence does satisfy the understanding, reason, and conscience of the jury, and produces in their minds a reasonable and moral certainty of the guilt of the defendant beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis than that of his guilt, then the jury should convict the defendant." *Held*, correct, notwithstanding the concluding sentence is unusual in charges upon circumstantial evidence.

6. Same—Alibi.—The charge of the court upon the issue of *alibi* is as follows: "Amongst other defenses interposed in this case by the defendant is what is known in legal phraseology as an alibi; that is, that if the deceased was killed as alleged, the defendant was, at the time of such killing, at another and different place from which such killing was done, and therefore was not and could not have been the person who killed deceased, if she was killed." * * * * To this portion of the charge the defense objected: 1. That it expresses an opinion as to the weight of evidence. 2. It sums up a material portion of the evidence. 3. It defines as a defense that which is only rebutting evidence. 4. The words "amongst other defenses" tends to weaken the prominent exculpatory facts, or evidence, relied on by defendant. 5. It conveys the impression that the evidence on this point was of little weight, and tends to convey to the minds of the jury that the State had sufficiently established the guilt of defendant, and that it devolved on the defendant to show that he was at a different place at the time of the commission of the offense. The majority of the court deciding against each of the exceptions to the charge, holds: 1. That it is not obnoxious to the first and second objections urged against it. 2. That *alibi* is a *defense* to a criminal prosecution, and it was not error to so denominate it in the charge. 3. That the burden of *proving an alibi* is not upon the defendant, and that the charge in this case neither positively nor inferentially shifts the burden of such proof upon the defendant. The rule is that if the evidence, whether in behalf of the State or the defendant, engenders in the minds of the jury a reasonable doubt as to defendant's presence at the time and place of the offense, the defendant is entitled to an acquittal; and the charge in this case in no degree obtrudes upon this rule. See the opinion of Willson, J., for a discussion of the question; and note his reassertion of the doctrine in the opinion on the motion for rehearing.

7. Practice—Evidence.—It is a statutory rule of evidence in this State, that when a part of a conversation has been brought out by one party, the other party is entitled to have the whole of the said conversation. With reference to certain testimony of the witness Barbee, objected to by the defense, the majority of the court holds it admissible as coming within the terms of this rule, and that the court properly admitted it.

8. Same.—See the dissenting opinion of Hurt, J., on original hearing, for certain proof proposed to be made for the defense by its witness Peareson, *held* by the majority of the court to have been properly excluded as coming within the nature of self-serving testimony.

9. Murder—Fact Case.—See the statement of the case for evidence held sufficient to support a conviction for murder of the first degree.

HURT, J., DISSENTING.

**10.  Charge of the Court—Burden of Proof.—Alibi** is *not* a *defense* to a criminal prosecution in any other sense than as rebutting evidence tending to disprove the facts relied upon by the State for conviction, or as evidence tending to raise a reasonable doubt of the truth of the same.   It was error, therefore, to instruct the jury that *alibi* was interposed as a *defense*.   Moreover, the effect of the charge (see the sixth head note) was to impose upon the defendant the burden of proving the *alibi*.   For an exhaustive discussion of the question, see the dissenting opinions.

**11.   Practice—Evidence.—**Upon the question of motive the State proved that litigation involving real estate had been long pending, and at the time of the homicide was still pending between the accused and the deceased.   To meet this proof the defendant offered to prove by his witness Peareson, in substance, that he, Peareson, as the attorney for the accused in the said litigation, advised the accused, prior to the homicide, that his title was absolutely good to all the land he claimed; that after the suit was instituted the accused, through the witness and his associate counsel, offered to surrender to the deceased all of the land to which she had title, and that when the said offer was made to her in open court, her attorneys and the presiding judge advised her to accept it.   Hurt J., holds (in opposition to the majority of the court), that the proposed proof, if true, tending strongly to eliminate the land litigation from the case as motive for the homicide, its rejection was error.   See the dissenting opinion on original hearing for a discussion of the question.

**12.   Same.—**Barbee, a State's witness, was asked on cross-examination by the defense, "if he did not say to Judy James (the principal witness for the prosecution), that her husband's neck was in danger if she did not tell what she knew?"   Barbee replied that he did not know that he used language so positive, but that he said to her, in effect, that the deceased was taken from her, Judy's, house, and that she ought to know something about it, and that if she did not tell what she knew, it would place her and her husband in danger.   On re-examination by the State, and over defendant's objection, the witness was permitted to testify to what Judy James said to him in reply.   Controverting the ruling of the majority of the court on this question, Hurt, J., holds that it was error to permit the witness to state in evidence the reply made to him by the witness Judy James, because:   1.   The questions propounded by the defense did not seek to elicit the conversation between the witnesses Barbee and Judy James, nor did they draw out a single statement made by Judy James to Barbee.   2.   The purpose of the defense being to show by Barbee that undue influences may have been applied to induce Judy James to swear to incriminating facts, the State, to support her, and to rebut the inference of such undue influences, might prove statements made by her *before* she was subjected to such influences, but not the statements made by her *after* she was so subjected.   See the dissenting opinions *in extenso* for an elucidation of the principle.

**13.   Same.—**It was the contention of the State that even if the testimony of Barbee as to the statements of Judy James was incompetent, it was immaterial error, in view of Judy James's statement to her husband at the time deceased was taken from her house, that the accused was one of the party who took her, and that, therefore, her subsequent testimony could not have been influenced as alleged by the accused.   But Hurt, J., dissenting, holds that the State's contention is without merit; that Judy James's testimony shows that at the time of the removal of the deceased she told her husband that " she *believed* one of the party was the accused," whereas subsequent to being indirectly threatened by Barbee with prosecution, in connection with her husband, who was then under arrest, she was *positive* as to the identity of the accused.

**14.   Same.—Charge of the Court** instructed the jury that they were the "sole judges of the weight of the evidence, and the credibility of the witnesses."   *Held,* sufficient to authorize the jury to credit the testimony of a witness, notwithstanding his impeachment on the question of veracity.

ON MOTION FOR REHEARING.

**15.** "Malice"—Charge of the Court.—To determine the sufficiency of a charge defining malice the appellate court will consider other portions of the charge explaining malice. Immediately following the definition held on the original hearing to be sufficient, the trial court explains express malice as follows: "Express malice aforethought is where one with a sedate and deliberate mind and formed design deliberately kills another," etc. *Held*, that such correct definition of express malice, in and of itself, fully expresses the legal meaning of malice.

**16.** Same—Alibi.—It is urged against the charge on *alibi* that it requires the jury to believe, in order to acquit the defendant, that he was not and *could not* have been the person who killed the deceased; that the use of the words "could not" means, in effect, that it was *impossible* for the defendant to have committed the murder, and thus to have imposed upon the accused the burden of proving the *alibi*, or that it was impossible for him to have committed the homicide. *Held*, by the majority of the court, that the objections are not maintainable, especially in the light of the concluding part of the charge which reads as follows: "Now, if the evidence raises in your minds a reasonable doubt as to the presence of the defendant at the place where the deceased was killed (if killed), at the time of the killing, then you should acquit the defendant." But see the dissenting opinion of Hurt, J., on the motion for rehearing maintaining the contrary, and reviewing authorities in support of his dissent.

**17.** Same—Express Malice.—The trial court charged the jury on express malice that "a sedate and deliberate mind and formed design is evidenced by external circumstances discovering that inward intention, as lying in wait," etc. Against this part of the charge it is urged that it is upon the weight of evidence, and virtually tells the jury that express malice is *proved* when any of the conditions enumerated in the charge are shown to have existed. *Held*, that the objection is not well taken. Note the approval on the subject of Sharpe's case, 17 Texas Ct. App., 486.

**18.** Same—Evidence.—Note the opinion of Willson, J., on the motion for rehearing, sustaining and elaborating the ruling of the majority of the court on the original hearing that the testimony of the witness Barbee, as to the declarations to him by the witness Judy James, was correctly admitted; and note the dissenting opinion of Hurt, J., on the motion, maintaining the converse proposition asserted in his original dissenting opinion. And note that the majority adheres to its original ruling that the trial court did not err in excluding the proposed testimony of the witness Pearson, offered to rebut the testimony of the State on the question of motive.

**19.** Same.—The defendant assigned for error, on a trial for murder, that the "court erred in permitting, to the prejudice of defendant's rights, the counsel for the State, while re-examining the witness Judy James, to cause the defendant James Gallaher to stand up before the jury and put on his head a broad brimmed hat, and put over his face a handkerchief, and then thus exhibiting the defendant before the jury to ask Judy James if that was the way Gallaher looked at the time she saw him, on the night of the murder, and in permitting Judy James to testify that 'that was exactly the way he looked,' thus permitting and requiring the defendant to testify against himself, to the material injury and prejudice of his rights." *Held:* Primarily, this question is not revisable by this court in the absence of a bill of exception. But waiving this legal requisite in this instance, the court holds that so far as the record shows, the disguise and exhibition of the defendant was not compulsory, but was consented to, and may even have been desired by him; and he can not now be heard to complain.

APPEAL from the Criminal District Court of Harris, on change of venue from Wharton. Tried below before Hon. C. L. Cleveland.

The conviction in this case was in the first degree for the murder of

Mary K. Brown, in Wharton County, Texas, on the seventh day of December, 1887.   The penalty assessed by the verdict was a life term in the penitentiary.

Beginning on page 455 of volume XXV of this series of Reports, will be found a condensed statement of the proof elicited on the *habeas corpus* trial of this defendant for bail, that trial involving the contemporaneous murder of Mary K. and Mayo Brown.   Many of the witnesses who testified on that proceeding testified on this trial, and so far as their testimony is the same in extent and detail, it will be merely referred to, and not repeated in this report.   Otherwise, only so much of the testimony contained in the 241 pages of the record, which comprises the statement of facts in this case, will be summarized as is necessary to elucidate the rulings on this appeal.

The State's first witness was J. B. Van Houton who, on the *habeas corpus* proceeding, testified as a witness for the accused.   See 25 Texas Ct. App., 488, *et seq.*   His testimony on this trial was substantially the same.   He stated further that the David James house, on the defendant's plantation, of which the deceased took forcible possession, and from which she was taken to her death, was not situated on, but was fully a half mile distant from the land then involved in the dispute between her and the defendant.   Just before retiring on the night preceding the night of the tragedy the defendant remarked to the witness that before taking steps to secure the ejectment of Mrs. Brown and her son from the house, he would wait and see what the officers would do about the warrant sued out by the witness for the arrest of Mrs. Brown.   He made no harsh remarks about Mrs. Brown, but appeared to be somewhat incensed against the officers for delaying the arrest of the woman.   He emphasized his statement on the *habeas corpus* trial, that when the defendant left on the morning of the fatal Wednesday, to go either to Wharton or Eagle Lake, or to both places, he rode an iron grey horse.

J. G. Barbee was the State's next witness.   He testified for the State on the *habeas corpus* proceeding, and his then testimony will be found set out at length in the report of that case, in the 25 Texas Court of Appeals, beginning on page 468.   His testimony on this trial did not include his statements on the *habeas corpus* trial as to the search of the house of Andrew Collins, and the discovery therein of the muddy boots, bloody shirt, etc.   He stated more fully, however, the particulars of his interview with Judy James, one of the occupants of the house from which the deceased and her son were taken on the fatal night, and declared that it was in consequence of the information derived from Judy James in that interview that the bodies were discovered.   He was not one of the parties who first interviewed Judy James when the search for the bodies was begun, but he understood from those who conducted that interview that no information whatever could be obtained from Judy.

Later in the day, after having failed in their search for their bodies, the witness and others went to the James house and the witness took Judy to a point either in front of or behind the house, where he told her, in effect, that she and her husband were in a critical condition; that the missing parties were taken from her house, and she ought to know something about it, and that if she did not tell what she knew, she and her husband were both placed in danger. Judy replied, in substance, that she was afraid to tell it out there in the crowd; that Mr. Gallaher was one of the men; that she heard shots; that she heard the shots over there in the prairie—pointing out the direction; that they were afraid to go out there to see, and that they had not been out there. The particulars of the controversy over the admission of this testimony appears fully in the four opinions delivered on this appeal.

This witness further testified that Judy James told him that the faces of the men were masked with dark bordered handkerchiefs, which they wore from the eyes down. After the discovery of the bodies the witness went to Van Houton's house, and in one of the rooms found two folded handkerchiefs hanging on some nails against the wall. Those handkerchiefs had dark blue borders, and had been tied at the ends. The ends and creases or folds indicated that they had been worn for some time, in such manner as handkerchiefs are commonly worn about the neck. Mrs. Brown's body showed a cut on the throat, and a gun shot wound in the face below one of the eyes.

David James was the next witness for the State. He was a witness for the State on the *habeas corpus* trial, but his narrative on this trial being more complete, it is summarized below.

He testified that he and his wife Judy lived on the defendant's plantation, in Wharton County, at the time of the murder of the deceased, occupying the house which, in the history of this case, has come to be known as the "James house." That house was situated about a half mile from the plantation house which was occupied by Captain Van Houton, the agent of the defendant, and the manager of the plantation. For some time previous to the week preceding the tragedy, the witness was in Fort Bend County. When he got home, several days before that event, he found Mrs. Brown, the deceased, and her son in possession of a part of his house. They had been there but a short while, as their "plunder" had not yet been unloaded from the wagon. A few days thereafter, in the evening, the witness had a conversation with the defendant about the deceased's intrusion upon his premises, he, witness, being anxious to be reinstated in his previous undivided possession of the place. This conversation, according to the witness's recollection, occurred on the evening of Tuesday—the evening preceding the fatal day. Defendant asked the witness if Mrs. Brown was still at his house? Witness replied that she was. Defendant said: "She won't be there much

longer.  Tie your dogs and keep them tied, for I am expecting the offi-
cers, and they may be here at any time." The witness next saw the
defendant on the following morning just before he left the plantation
and rode off in the direction of Wharton.  On that morning the defend-
ant told the witness again to tie his dogs and keep them tied, as he was
expecting the officers, who might arrive at any time. It was between 7
and 8 o'clock in the morning when defendant left his plantation going
towards Wharton. According to the defendant's order the witness had
his dogs tied late on that Wednesday evening.

The deceased and her son had taken possession of the large room in
the house, leaving the witness and his family in possession of the adjoin-
ing or shed room and the kitchen, which was connected with the shed
room by an open hall. On that Wednesday night while he and his wife,
the witness holding his sick child on his lap, were sitting at their supper
table in the kitchen, at an hour not later than 8 o'clock, three men, one
of whom was Henry Allen, colored, entered the house through the
kitchen. Henry Allen was in advance. The other two were white men.
The white men wore masks of dark bordered handkerchiefs over their
faces, up to their eyes, broad brimmed white hats, and boots drawn up
over the trouser legs. Not a word was said by either of the men when
they entered, but they passed rapidly through the kitchen, hall, and shed
room to the back door of the room occupied by Mrs. Brown. Allen
knocked at that door, and at the instant it was opened by Mrs. Brown,
the two men in masks rushed into the room. One of the men seized
Mrs. Brown and the other the boy. Presently one of the men called
Allen in to help overpower Mrs. Brown. Allen went into the room to
do their bidding. One of the men then called to witness to help fasten
the boy. Witness did not want to comply, but the man hallooed to him:
" Old man, if you don't come in here and help take this boy out, I will
kill the last d—d one of you!" He repeated that threat three or four
times and finally said to witness, "I deputise you to come and help
fasten him." Witness reluctantly entered the room and helped the man
to take the boy out and through the kitchen, and to tie him. Mrs.
Brown was taken out of the house a few moments before the boy was.
The boy was immediately taken to the gate, where Mrs. Brown was in the
hands of the other man. At the gate the man placed the boy on a bay
horse—the only horse that the witness saw—and left the place, one man
leading or walking abreast with the horse, and the other man and Mrs.
Brown on foot. Witness never afterwards saw Mrs. Brown or the boy
alive.

While at the house the men said they were officers from Wharton, and
that they were going to take Mrs. Brown and her son to Wharton that
night. Mrs. Brown said that she knew Mr. Jones, and that he was a
nice man, but if either of the men claimed to be Mr. Jones (the sheriff)

the witness did not hear it. Mrs. Brown then begged to be left at the house until morning, but the men replied that they would be taken to Wharton that night. The boy then said, "I know you are going to kill me." The man who had charge of Mrs. Brown the witness took to be and believed was this defendant. He did not see his eyes, nor could he tell anything by the voice, which was muffled with the mask. But he had the physical stature and development of the defendant; his movements were in every way similar to those of the defendant, which were peculiar; he wore such a hat, and such colored clothes as the defendant, if not habitually, most frequently wore, and he had his pants in his boots, a constant habit of the defendant. Upon the whole the witness was very confident, though not absolutely positive, that the defendant was the man who took Mrs. Brown off. The handkerchiefs used by the men to mask their faces were white, with dark borders strikingly similar to those exhibited on the examining trial.

The testimony of Judy James, the next witness for the State, was a much more detailed, circumstantial narrative of what transpired at the house on the fatal night, but it conflicted in no particular with that of her husband. Her testimony in chief was, in substance, the same as her evidence delivered on the *habeas corpus* trial (25 Texas Ct. App., 459, *et seq.*), except that, instead of a partial, it shows a positive, unequivocal, and absolute identification of the defendant as the disguised man who took the deceased away from her house on the night of Wednesday, December 7, 1887. As on the *habeas corpus* trial, the witness testified on this trial that about an hour after the men left with Mrs. Brown and the boy, she heard five shots fired from the direction towards which the men took the woman and boy, and where, on the succeeding Friday morning, she saw Mrs. Brown's dead body.

This witness was subjected to an exceedingly severe and searching cross-examination by the counsel for the defense, but she was not shaken in her testimony positively identifying the defendant by his general appearance, size, voice, and movement. Fixing time, place, and persons, the defendant's counsel asked the witness if she did not, in December after the examining trial, state to several parties that she did not know who the men were that came to her house and took Mrs. Brown off; that on the next trial she would tell the truth, and that Mr. Fitzgerald had told her that her husband's neck was in danger, wherefore she had laid it on the defendant? The witness denied most emphatically that she had ever made such statements. Upon this denial she was subsequently contradicted by the defendant's witnesses Burney, Hunter, and Norris. It was upon the re-examination of this witness that the episode occurred which is made the subject matter of the ruling announced in the nineteenth headnote of this report. The State's counsel produced a broad-brimmed hat and a handkerchief, and proposed to "experiment" with the defend-

ant for the benefit of the jury. He then invited the defendant to stand up before the jury and submit to disguise after the manner of the men who took the Browns away from the witness's house. He submitted, and was attitudinized by the State's counsel before the witness in the presence of the jury. In answer to questions then propounded, the witness said that he presented the same appearance, in the several attitudes, while at her house on the fatal night. The record contains no bill of exception to this proceeding, and no objection by the defense is noted in the statement of facts.

The State's testimony otherwise shows that the bodies of Mrs. Brown and her son were found on Friday, December 9, 1887, on the prairie, about three quarters of a mile from the "James house," in the direction indicated by Judy James as that in which they were taken off. The cause of Mrs. Brown's death was a gun shot wound in the face, and a cut across the throat.

*Alibi* was the defense relied upon, and it was based upon the testimony of the witnesses Anders, Duboy, Moore, Busch, J. C. Cooper, and Mrs. Cooper. The reputation of J. C. Cooper for truth and veracity was assailed by a number of State witnesses, and sustained by numerous witnesses for the defense. As on the *habeas corpus* trial, the good general character of the defendant was supported by a large number of witnesses. Van Houton testified that the blue bordered handkerchief taken from his house, and exhibited on the examining trial, belonged to him, the witness. In short the general tenor of the defensive proof on this trial was the same as that adduced on the *habeas corpus* trial, and reported in the twenty-fifth volume of these Reports. The contention which arose on this trial over the testimony of Colonel P. E. Peareson is shown sufficiently in the opinions of the court.

Able written arguments in support of the briefs, and on motion for rehearing were filed, but aside from being too lengthy for insertion, they can not, under the present law, be incorporated in a report.

*I. N. Dennis, P. E. Peareson,* and *Jones & Garnett,* for appellant. The appellant being indicted and on trial for murder, it was the imperative duty of the trial court to define and explain to the jury the meaning of the term malice, because it is a part of the law of and applicable to the case, in that there can be no murder without malice.

The court in its charge tells the jury that "malice is the intentional doing of a wrongful act toward another without legal justification or excuse." The charge nowhere states that "malice evidences a heart regardless of social duty and fatally bent on mischief·" nor does it anywhere state that the wrongful act must be one "without extenuation or mitigation," as well as without justification or excuse. McCoy v. The State, 25 Texas, 38; Bowers v. The State, 24 Texas Ct. App., 549; Hays v. The

State, 14 Texas Ct. App., 330, 331; Harris v. The State, 8 Texas Ct. App., 90–103; Tooney v. The State, 5 Texas Ct. App., 163–188; Griffin v. The State, 9 S. W. Rep., 461; 3 Greenl. on Ev., secs. 14, 119, 144; 2 Bouv., verb "Malice."

The court erred to defendant's prejudice in charging the jury that "if you believe that defendant killed deceased by shooting her with a pistol, or by cutting her with a knife, you should find defendant guilty," etc., without at the same time instructing the jury as to the character of the pistol and knife, or either of them, and whether or not said weapons, or either of them, were deadly either in themselves or as used, and likely, as used, to produce death; and in instructing the jury that they should convict defendant if deceased came to her death by being shot with a pistol or cut with a knife, the indictment alleging that deceased came to her death by being shot with a pistol and cut with a knife, thus charging disjunctively as to the weapons, while the allegation of the indictment is conjunctive as to the weapons.

It is alleged in the indictment that defendant killed Mary K. Brown by shooting her with a pistol and by cutting her with a knife, and it was incumbent on the State to prove these allegations, and each of them; and to show that if deceased came to her death by the use of these means or instruments in defendant's hands, that the same were deadly weapons, and likely as used to produce death, which proof the State failed to make; and it being charged in the indictment that deceased was killed by both these means or instruments, the court's charge as to the means or instruments of death was unauthorized; especially so because it authorized the jury to convict in the absence of any evidence as to the character of the instruments or means of death, and whether death resulted from their use, or the use of one or the other of them.

The indictment charges that deceased was killed by being shot with a pistol and by being cut with a knife. No person saw the killing, nor did any one see the pistol *and* knife, or either of them, by which it is charged to have been done. The witnesses Spivy and Barbee saw wounds on deceased's head and face, Barbee being some distance from the body on horseback; Mrs. Spivy did not go very near the body. There was a cut on the face and neck, and what appeared to be a gun shot wound in or near the nose, but what kind of a knife made the cut, or whether the shot was from a pistol or not, the evidence does not show. Penal Code, arts. 612–15; Jones v. The State, 22 Texas Ct. App., 680; Lightfoot v. The State, 20 Texas Ct. App., 77; 3 Greenl. Ev., sec. 141; Hartwell v. The State, 23 Texas Ct. App., 88; Howard v. The State, 18 Texas Ct. App., 348; Tooney v. The State, 5 Texas Ct. App., 163; Nichols v. The State, 24 Texas Ct. App., 137 and 139.

The court in its charge failed to instruct the jury that if they are not

satisfied of defendant's guilt from the evidence beyond a reasonable doubt, that they will acquit the defendant of any offense.

The court in its general charge should always instruct the jury that unless the evidence satisfies them of defendant's guilt beyond a reasonable doubt, he is entitled to be acquitted. The charge, in so far as it authorizes an acquittal, is vague and indefinite, and not couched in plain and explicit terms, but is negative in its terms. Maddox v. The State, 12 Texas Ct. App., 429; Steagald v. The State, 22 Texas Ct. App., 464; Burkhart v. The State, 18 Texas Ct. App., 599; Jackson v. The State, 15 Texas Ct. App., 84; Reynolds v. The State, 14 Texas Ct. App., 427; Odle v. The State, 13 Texas Ct. App., 612; Hackett v. The State, 13 Texas Ct. App., 406; Snowden v. The State, 12 Texas Ct. App., 105; Irvine v. The State, 20 Texas Ct. App., 41; Robertson v. The State, 10 Texas Ct. App., 607; Cohea v. The State, 9 Texas Ct. App., 173; Terry v. The State, 8 Texas Ct. App., 471.

The court erred in its charge on circumstantial evidence in adding to the first paragraph of its charge on that subject (the said first paragraph being an affirmative proposition) the following: "But if the evidence does not satisfy the understanding, reason, and. conscience of the jury, and produces in their minds a reasonable and moral certainty of the guilt of the defendant, beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis than that of his guilt, then the jury should convict the defendant."

The whole charge on circumstantial evidence is erroneous, and calculated to injure the rights of defendant, because the same was not a correct and full exposition of the law, in that it fails to instruct the jury that to justify his (defendant's) conviction on circumstantial evidence alone the facts relied upon must be absolutely incompatible with the innocence of the accused, and incapable of explanation upon any other reasonable hypothesis than that of his guilt; and because the charge on circumstantial evidence submits to the jury the whole subject in two affirmative propositions as to the defendant's guilt, and does not at the same time submit to the jury the negative or converse proposition of innocence, thus keeping and holding up before the jury the affirmative proposition of defendant's guilt with marked, undue, and injurious prominence, thereby causing the jury to give undue weight to the court's charge, in that it directed their minds by repetitions in the charge to defendant's guilt alone, and did not at the same time and in the same connection permit and allow them to consider the question of his innocence and of his not being guilty.

If the first sentence of the charge on circumstantial evidence was correct (which is not admitted), it embodies all the law on that subject and was complete in itself; but when the court, apparently not satisfied with the manner in which it had presented the subject to the jury, added a

new and additional sentence by presenting the affirmative proposition of
defendant's guilt in a strong and prominent manner to the jury, all the
force, pith, and meaning of the first portion of the charge that might
have benefited defendant were taken away and destroyed. Barnes v.
The State, 41 Texas, 342; Hunt v. The State, 7 Texas Ct. App., 235;
Stuckey v. The State, Id., 177–79; Harrison v. The State, 8 Texas Ct.
App., 186; Barr v. The State, 10 Texas Ct. App., 507; Bishop v. The
State, 12 Texas Ct. App., 432–36; Bishop v. The State, 43 Texas, 390;
Estep v. The State, 9 Texas Ct. App., 370; Robertson v. The State, 10
Texas Ct. App., 607; Brookin v. The State, 10 S. W. Rep., 219.

The addition by the court of the last part or sentence of the charge on
circumstantial evidence to what had preceded it was unauthorized, and
it so qualified and limited the meaning and force of the first part as to
withdraw the jury's attention from it, and to cause the jury to look to
and consider only the affirmative question of guilt. See authorities un-
der first proposition this assignment, and also Howard v The State, 18
Texas Ct. App., 348; Gibbs v. The State, 1 Texas Ct. App., 13; McFar-
lin v. The State, 41 Texas, 23.

The court is only required to state the law directly and plainly, and it
is error for it to place by repetition too prominently before the jury any
principle of law involved in the case, because by so doing the court cre-
ates an impression in the minds of the jury as to what the court's opinion
is with regard to the facts to which the principle is applicable, and
conveys by necessary inference the idea that on the court's mind there is
an impression that the defendant is not innocent, but guilty; which was
the effect of the court's language in that part of the charge under discus-
sion here. Irvine v. The State, 20 Texas Ct. App., 39–41; Jackson v.
The State, 15 Texas Ct. App., 84; White v. The State, 18 Texas Ct.
App., 57; Reynolds v. The State, 7 Texas Ct. App., 412; Taylor v.
Townsend, 61 Texas, 147; Powell v. Messer, 18 Texas, 406.

In view of the unauthorized addition made by the court to the general
charge on circumstantial evidence, which standing alone may have been
correct, the court should have gone further and instructed the jury that
"to justify a conviction of defendant on circumstantial evidence alone,
the facts relied on must be absolutely incompatible with the innocence of
the accused, and incapable of explanation upon any other reasonable hy-
pothesis than that of his guilt," which the court failed to do.

The first part or sentence of the charge may be a correct abstract state-
ment of the rule of law applicable to circumstantial evidence, but the
concluding sentence renders it of no value to the defendant, because it
takes from the charge all of its beneficial qualities. The charge, not-
withstanding this fact, does not tell the jury that to justify the defend-
ant's conviction on circumstantial evidence alone the facts relied on must
be absolutely incompatible with his innocence, and incapable of explana-

tion on any other reasonable hypothesis than that of his guilt. Barnes v. The State, 41 Texas, 542; Barr v. The State, 10 Texas Ct. App., 512, 513; Pogue v. The State, 12 Texas Ct. App., 283; Black v. The State, 1 Texas Ct. App., 391; Hunt v. The State, 7 Texas Ct. App., 212.

The court erred in charging the jury on reasonable doubt, thus: "The defendant is presumed by the law to be innocent until his guilt is established by legal evidence to the satisfaction of the jury beyond a reasonable doubt, and unless the evidence so satisfies you in the case of the guilt of defendant of murder of the first or second degree, then you will find him not guilty." This charge is erroneous in form and substance, and prejudicial to defendant's rights, because it fails to tell the jury distinctly and affirmatively that in case of reasonable doubt as to his guilt, the defendant is entitled to be acquitted; because it fails to apply the reasonable doubt distinctly and clearly to each degree of murder separately; because it fails to instruct the jury that the presumption of evidence is to be indulged as to each degree of murder separately; and because it fails to instruct the jury that before a conviction can be had in this case, the evidence must show that the offense was committed in Wharton County. Code Crim. Proc., art. 227; Penal Code, art. 11; Fury v. The State, 8 Texas Ct. App., 471; Cohea v. The State, 9 Texas Ct. App., 173; Robertson v. The State, 10 Texas Ct. App., 607; Irvine v. The State, 20 Texas Ct. App., 41; McCall v. The State, 14 Texas Ct. App., 353; Guagardo v. The State, 41 Texas, 626–634; Rockhold v. The State, 16 Texas Ct. App., 585.

The court, in charging on reasonable doubt, failed to charge the jury that if they had a reasonable doubt of the identity of defendant as one of the men who removed Mrs. Brown from the house of David James on December 7, 1887, in Wharton County, he was entitled to be acquitted. This charge was suggested by clause eight of defendant's exception to the charge, and was rendered necessary by the obscurity of the court's general charge on the subject of reasonable doubt.

The court did not charge the jury on the case as made by the evidence with regard to defendant's identity, neither did the court apply the facts to the law nor the law to the facts, but only charged in a general and abstract way. The identity of defendant as one of the men who removed Mrs. Brown from the house was the main and pivotal point in the case, and on that point the charge is silent. Mayfield v. The State, 23 Texas Ct. App., 645; O'Connell v. The State, 18 Texas Ct. App., 363; Roddy v. The State, 14 Texas Ct. App., 528, Stephens v. The State, 4 Texas Ct. App., 491; Darnell v. The State, 43 Texas, 147.

The court erred in its charge by using the following language in reference to the means by which deceased came to her death: "If you believe that defendant did kill her (meaning the deceased) *with a pistol* or by cutting her with a knife, then you will find defendant guilty," etc. This

charge is erroneous because unauthorized by any allegation in the indictment, or by any evidence adduced on the trial. The indictment alleges. that she was killed by being *shot with* a pistol and cut with a knife.

The indictment charges that defendant killed deceased by shooting her with a pistol and cutting her with a knife. Two witnesses testified that deceased had a gunshot wound in her face. The charge tells the jury to convict if the evidence shows that she was killed with a pistol, etc., whether by shooting or not. Under the charge the jury might convict if the deceased was "clubbed or beaten to death with the pistol." Conn v. The State, 11 Texas Ct. App., 390; Kouns v. The State, 3 Texas Ct. App., 13; Cooper v. The State, 22 Texas Ct. App., 419; Serio v. The State, 22 Texas Ct. App., 633; Stewart v. The State, 15 Texas Ct. App., 598; Allen v. The State, 24 Texas Ct. App., 216; Orman v. The State, 24 Texas Ct. App., 495; Foster v. The State, 8 Texas Ct. App., 248; Garcia v. The State, 19 Texas Ct. App., 389; Bramlette v. The State, 21 Texas Ct. App., 611; 3 Greenl. Ev., sec. 141.

The court erred in its charge on alibi by using the following language: "Amonst other defenses interposed in this case by the defendant is what is known in legal phraseology as an alibi—that is, that if the deceased was killed as alleged, the defendant was at the time of such killing at another and different place from which such killing was done, and therefore was not and could not have been the person who killed deceased, if she was killed."

This language of the court was erroneous for the following reasons, to-wit: 1. It expresses an opinion as to the weight of the evidence. 2. It sums up a material portion of the evidence. 3. It defines as a defense that which is only rebutting evidence. 4. The words "amongst other defenses" tends to weaken the prominent exculpatory facts or evidence relied on by defendant. 5. It conveys the impression that the evidence on this point was of little weight, and tends to convey to the minds of the jury that the State had sufficiently established the guilt of defendant, and that it devolved on the defendant to show that he was at a different place at the time of the commission of the offense.

The language of the charge is a comment on the weight of the testimony, and has the effect to belittle in the minds of the jury what the court is pleased to term the defense of an alibi. Penal Code, art. 51;. Walker v. The State, 42 Texas, 369; Ayres v. The State, 21 Texas Ct. App., 399; Humphries v. The State, 18 Texas Ct. App., 502; Harrison v. The State, 8 Texas Ct. App., 186; Stuckey v. The State, 7 Texas Ct. App., 179.

The court erred, in view of the form and nature of its charge on alibi and reasonable doubt, in failing to charge as suggested in defendant's bill of exceptions No. 6, as follows: 1. If defendant, at the time Mrs. Brown was killed, was at "Rhody" Cooper's house, and so far away from the

place of killing that it was impossible for him to have done the killing, he should be acquitted. 2. And if you have a reasonable doubt that defendant was present at the time and place of killing you will acquit him. 3. And if from all the evidence you can not determine beyond a reasonable doubt whether the defendant was present at the time and place of the killing of Mrs. Brown, or whether at that time he was at "Rhody" Cooper's house, then he is entitled to be acquitted.

The main exculpatory fact relied on by defendant was that at the time of the alleged killing of Mrs. Brown he was at "Rhody" Cooper's house, twelve or fourteen miles distant from the place of killing. Only one witness pretended to identify defendant as one of the men who took Mrs. Brown from David James's house. This witness was Judy James. The charge of the court on reasonable doubt was vague, indefinite, and negative, and ot fhe same nature on alibi. There was no direct, plain, and affirmative application in the charge of the law to the facts in evidence, and it did not apply the law pertinently to the case as made by the allegation in the indictment and the evidence adduced on the trial. Defendant proved by J. C. Cooper, Mrs. Cooper, Louis Busch, Dick Duboy, Richard Moore, and Mr. Anders that he was at Cooper's house and in its vicinity from 12 o'clock on the 7th day of December, 1887, until the next morning; and that he was at Cooper's house from sundown on that day until 8 o'clock the next morning. Johnson v. The State, 13 Texas Ct. App., 378; Mayfield v. The State, 23 Texas Ct. App., 645; 11 Texas Ct. App., 390; 3 Id., 13; 22 Id., 419; Id., 633; 15 Id., 598; 24 Id., 216; Id., 495; 8 Id., 248; 19 Id., 389; 21 Id., 611; 16 Id., 585.

In view of the importance to the defendant of the testimony of the witnesses sought to be impeached, the court failed to and should have charged the jury as suggested in defendant's bill of exception No. 6, clause 3, that a witness sought to be impeached may still be believed by the jury, and notwithstanding such impeaching testimony they are still the judges of the credibility of all the witnesses, including the witnesses sought to be impeached; and also that when a sustaining witness states of a witness sought to be impeached, that he is well acquainted with such witness, and with his friends and neighbors where he is best known, and that he has never heard the general reputation of such witness for truth and veracity questioned, that such sustaining witness thereby qualifies himself to testify as to such general reputation.

The exceptions of defendant to the charge of the court suggested this omission and defect of the charge on this point. The State attempted to impeach the witness "Rhody" (J. C.) Cooper, and the defendant sought to sustain said Cooper by numerous witnesses. Kelly v. The State, 1 Texas Ct. App., 634; Cooper v. The State, 7 Texas Ct. App., 202; Wolf v. The State, 25 Texas Ct. App., 709, 710; Boon v. Weatherford, 23 Texas, 687; Francis v. The State, 7 Texas Ct. App., 501; Stewart v. The

State, 15 Texas Ct. App., 605–7; Davis v. The State, 10 Texas Ct. App.,. 31; Holbert v. The State, 9 Texas Ct. App., 228; Walker v. The State,. 6 Texas Ct. App., 607; Willson's Crim. Stats., secs. 2335, 2349, and au-- thorites there collated.

Considering the vital importance of the State's witness Judy James as. against the defendant, and whose contradictory statements out of court were testified to by the witnesses for defendant, the court should have instructed the jury on the law applicable to such evidence.

The court failed to charge the jury on this phase of the case, although the court's attention was called to it by defendant's exceptions to the charge. Henderson v. The State, 1 Texas Ct. App., 436, 437; Howard v. The State, 25 Texas Ct. App., 693.

The witnesses Burney, Norris, and Hunter testified to Judy James's; contradictory statements out of court.

In the paragraph of the charge as to the jury being the judges of cred-ibility of the witnesses, the court omitted to further instruct the jury that this included the credibility of the witnesses sought to be impeached, and that after considering the testimony of all the witnesses, if the jury have a reasonable doubt of the defendant's guilt, he was entitled to be; acquitted.

The defendant sought to impeach the witness Judy James, and pro-duced three witnesses for that purposes to prove her statements made out, of court touching the alleged murder of Mrs. Brown. The State at-tempted to impeach the defendant's witness "Rhody" Cooper. The. charge of the court failed to present this phase of the case to the jury,. although attention was called to it by defendant's exception to the charge.. See authorities referred to under the two preceding propositions, and Austin Smith v. The State, 22 Texas Ct. App., 199, 200.

The court erred in permitting the State's witness Barbee while on the stand to state what Judy James, another witness for the State, told him about defendant being one of the men who took Mrs. Brown out of the house.

The questions by defendant's counsel to Barbee sought to elicit from the witness facts showing that the witness Judy James was frightened and intimidated by Barbee and the crowd at her house, and through fear and intimidation was induced to charge the murder of Mrs. Brown on the defendant. Barbee was not asked by defendant's counsel to state. what Judy James said to him, but was asked what he said to her, and this was all that defendant asked him; but on re-examination of Bar-- bee by the State's counsel the court, over objection of defendant, per-mitted the witness Barbee to detail what Judy James told him as to defendant's connection with Mrs. Brown's removal from the house on. the night of December 7, 1887. Barbee's interview with Judy James. took place on Friday evening, two days after Mrs. Brown was removed

from the house, and when her husband was under arrest for killing Mrs. Brown. Barbee and Judy James were both witnesses for the State. Barbee was first placed on the stand, and Judy James was not examined as a witness until after he had testified. This proposition is elementary, and citation of authority is deemed unnecessary, but see Baily v. The State, 9 Texas Ct. App., 98; Branch v. The State, 15 Texas Ct. App., 102; McWilliams v. The State, 44 Texas, 116; Rogers v. The State, 9 S. W. Rep., 765.

The court erred in excluding the answers of the witness Peareson to the questions asked him by defendant's counsel as to the litigation between the defendant and the deceased, Mrs. Brown, and as to state of defendant's mind concerning said litigation, said answers being sought for the purpose of showing the condition of the defendant's mind and disposition with reference to the lawsuit; and his knowledge of the same as gained from the witness, who was his attorney in the case; and as showing that the defendant had no motive arising out of the litigation to commit the offense charged against him, the State relying upon and urging such litigation as a motive for the killing of Mrs. Brown by defendant. 1 Greenl. Ev., 153; Hobbs v. The State, 16 Texas Ct. App., 517; Phillips v. The State, 22 Texas Ct. App., 271; Preston v. The State, 8 Texas Ct. App., 30; Bouldin v. The State, 8 Texas Ct. App., 333, Washington v. The State, Id., 377; Rockhold v. The State, 16 Texas Ct. App., 584.

*Goldthwaite & Ewing*, also for the appellant, on the motion for rehearing, filed an able and exhaustive argument in support of the motion.

*W. L. Davidson*, Assistant Attorney-General, for the State.

*Hutcheson, Carrington & Sears*, also for the State.—We lay down the following general propositions as to the requisites of a charge which pertain to the questions presented:

A charge need employ no specific language, form, or phraseology. Substantial accuracy and correctness in principle, so expressed as that the jury can comprehend it, and confined to the law of the case, is all that is required. "It need not be framed with entire accuracy and precision of language which render it impervious to the assaults of criticism; it need not give the most approved definition of crime, yet if it be substantially correct, and sufficiently intelligible to enable the jury to apply rightly the law to the facts, and to attain substantial justice, it will suffice." Alexander v. The State, 12 Texas, 544; Ashlock v. The State, 16 Texas Ct. App., 13. This rule applies to charges on circumstantial evidence, and on defense of *alibi*, definitions of malice, etc. Harris v. The State, 8 Texas Ct. App., 109; Loggins v. The State, Id., 445; Hubby v. The State,

Id., 608; Walker v. The State, 6 Texas Ct. App., 576; Booth v. The State, 4 Texas Ct. App., 202.   The charge will be construed as a whole, and not by isolated parts or paragraphs, and if as a whole it is sufficient, it meets the demands of the law.   Hart v. The State, 21 Texas Ct. App., 163; Smith v. The State, Id., 316.

Replying to the appellant's criticisms of the definition of malice in the charge, we submit that it is in the very language employed by elementary writers and approved by our own court.   2 Bouv. Law Dic., 139; Willson's Crim. Forms, 709; McKinney v. The State, 8 Texas Ct. App., 626; Lander v. The State, 12 Texas, 481; Bowers v. The State, 24 Texas Ct. App., 549.

The third and eighth assignments apply to the instruction of the court on the means or weapons producing death.   The charge was warranted by the evidence, was correct in itself, and were it subject to verbal criticism, yet, not being excepted to at the time, would only be reversible error, if error, when it operated prejudicially to the defendant.   The facts did not call for charges on the law embraced in articles 612 to 614 of the Penal Code, as to deadly weapons.   That the evidence warranted the charge:   Hackett v. The State, 13 Texas Ct., App., 406; Odle v. The State, Id., 612.   That articles 612 to 615 of the Penal Code do not apply: Howard v. The State, 18 Texas Ct. App., 348; Hartwell v. The State, 23 Id., 88; Nichols v. The State, 24 Id , 139.

The charge of the court on reasonable doubt was substantially in the language of the statute, and is in the very language of a charge approved by this court.   To object to the use of the expression "you will find him not guilty," instead of "you will acquit him," is hypercritical.   No such objection was made at the trial, and could only avail defendant here if calculated to injure him, which we do not think the boldest man would claim.   4 Texas Ct. App., 195.

The charge of the court on circumstantial evidence was clear and correct, very favorable to the defendant, and is well sustained by authority. Sims v. The State, 8 Texas Ct. App., 239; Hardin v. The State, Id., 657; Rye v. The State, Id., 160; Hubby v. The State, Id., 608; Brown v. The State, 23 Texas, 200; Taylor v. The State, 9 Texas Ct. App., 104.

The court is not called on to charge a reasonable doubt on each fact, phase, or branch of the case, where there is a general charge giving the law on the subject of defendant's right to all reasonable doubt of his guilt in the entire case.   McCall v. The State, 14 Texas Ct. App., 353; Barr v. The State, 10 Texas Ct. App., 507; Ashlock v. The State, 16 Texas Ct. App., 13; McCulloch v. The State, 23 Texas Ct. App., 620.

The error complained of in the eighth assignment was not excepted to below; if the omission of the word "shot" was error, it is fully supplied in the paragraph which charges on conviction of murder in the first degree, which is the very degree of which he was found guilty; and certainly

an omission to use the word "shot" in the charge on murder in the second degree could not have induced the jury to convict him of the first degree.    They convicted him of murder of the first degree on the charge concerning that degree, the only way they could do so, and this assignment is puerile.    Smith v. The State, 22 Texas Ct. App., 316; Hodges v. The State, Id., 415; Steagald v. The State, Id., 464; Hart v. The State, 21 Texas Ct. App., 163.

The charge on *alibi* is in the very language approved by our court. Willson's Crim. Forms, No. 713; Walker v. The State, 6 Texas Ct. App., 602.

For the court to have charged, as contended by appellant in the eleventh and twelfth assignments (as to the right of the jury to consider the credibility of impeached witnesses, etc.), would have violated statutory law and correct legal principles regulating charges.    The province of the court is simply to pass on the admissibility of evidence, and then never allude to it in its charge.    Code Crim. Proc., secs. 677, 678, arts. 728, 729; Brown v. The State, 23 Texas, 201; Leverett v. The State, 3 Texas Ct. App., 213; Bishop v. The State, 43 Texas, 397; Allison v. The State, 14 Texas Ct. App., 426; Butler v. The State, 3 Texas Ct. App., 50; Ross v. The State, 29 Texas, 499; Maddox v. The State, 12 Texas Ct. App., 435; Stucky v. The State, 7 Texas Ct. App., 178; Parish v. The State, 45 Texas, 53.

Barbee's testimony was perfectly legitimate on two grounds:

1.    It was a part of a conversation brought out entirely by defendant's cross-examination, and we were entitled to the whole conversation.

2.    The evidence defendant drew out of Barbee was to reflect on and impeach Judy James, and whenever defendant undertook to do so we had the right to show that she always made the same and consistent statement with her evidence.    On the first ground see Code Crim. Proc., art. 751; Pharr v. The State, 9 Texas Ct. App., 129.    On the second, Bailey v. The State, 9 Texas Ct. App., 98.

Appellant seems to lay stress on the fact that at the time this evidence was adduced Judy James had not been either sworn or impeached.    We reply that the only purpose of the Barbee testimony which evoked the evidence complained of was to impeach and did begin her impeachment; that there is no order in which evidence is introduced in this State, and the State can anticipate defendant's evidence if it wishes.    All that is required by the rule in this State is, that the evidence is at the time or by evidence anticipated rendered competent, otherwise it is excluded.    But no evidence competent to have been put into a case was ever excluded because introduced too soon.    Heard v. The State, 9 Texas Ct. App., 1; Gibson v. The State, 23 Texas Ct. App., 414; Phillips v. The State, 22 Texas Ct. App., 173; Manlove v. The State, 5 Texas Ct. App., 273.

The witness Pearson had stated all that could be of any consequence

regarding the suit, and the questions asked him were wholly incompetent for any purpose.

WILLSON, JUDGE.—Numerous objections are urged by counsel for the defendant to the charge of the court, each of which we have carefully considered, and will briefly refer to and determine.

1. "Malice" in the charge is defined to be "the intentional doing of a wrongful act to another without legal justification or excuse." This definition of the term is precisely the same as that given in McKinney's case and approved by this court. 8 Texas Ct. App., 626; see also Harris. v. The State, Id., 90, as to definition of "malice"; Lander v. The State,. 12 Texas, 481.

2. It was not error to instruct the jury that if the defendant "killed the deceased by shooting her with a pistol, *or* by cutting her with a. knife," etc. It was charged in the indictment that he used both means. in killing her, and it was sufficient to prove that he used either. Nor was it necessary to prove or charge, in view of the other evidence in the case, that the weapon used was a deadly one.

3. Upon the presumption of innocence and reasonable doubt the the charge is full and correct, and not subject to the objections made; to it.

4. Nor is the charge on circumstantial evidence objectionable, but on the contrary it is substantially the form of such a charge which has re- peatedly been approved in this and other States. It has not been usual to add to a charge upon circumstantial evidence the last sentence con- tained in the one before us, but we can perceive no error in such addi- tion, as it certainly announces a correct principle of law applicable to the case.

5. A majority of the court hold that the charge on *alibi* is sufficient. It is almost a literal, and is a substantial, copy of the one approved by this court in Walker v. The State, 6 Texas Court of Appeals, 576. It has; been approved by this court in numerous subsequent unreported cases. We are unable to appreciate the objections made to this charge. We can not see that it is upon the weight of the evidence, or that it sums up the evidence or any portion of it. It does not obtrude upon the jury the opinion of the judge as to the facts upon the issue. It refers to the term *alibi* as a *defense.*

It is argued that *alibi* is not a *defense.* This objection is to our mind without merit, and but for the dissent of our brother, Judge Hurt, and the earnest insistance of counsel for defendant, we would not regard it as requiring serious consideration. In common parlance the term *alibi* is understood to mean a *defense* made in a criminal prosecution. It is denominated a *defense* in Webster's Dictionary. It is also denominated and treated as a *defense* by courts of the highest authority, and by stand-

ard authors.   Mr. Wharton defines it as follows:   "It is a *defense* re-
sorted to in criminal prosecutions where the party accused, in order to
prove that he could not have committed the crime with which he is
charged, offers evidence that he was in a different place at the time the
offense was being committed."   Whart. Law Dic., "Alibi."

Mr. Sackett, in his Instructions to Juries, p. 499, gives two approved
forms of a charge upon *alibi*, in both of which it is denominated defense.
In the American and English Encyclopædia of Law we find the follow-
ing:   "A prisoner or accused person is said to set up an *alibi* when he
alleges that at the time when the offense with which he is charged was
committed he was elsewhere, that is, in a different place from that in
which it was committed.   If proved, it is of course a complete answer to
the charge.   An *alibi* is as much a traverse of the crime charged as any
other defense."   Vol. 1, pp. 454, 455.   Numerous decisions are cited in
the notes to the text above quoted, in many of which *alibi* is referred to
and denominated a *defense*.   We think *alibi* is a defense; as much so as
insanity, or any other exculpatory matter.   But it is further insisted that
the charge in question erroneously casts upon the defendant the burden
of proving an *alibi*, and that such a charge was condemned by our Su-
preme Court in Walker v. The State, 42 Texas, 360.   An examination
of the charge under discussion in the Walker case will show that it and
the charge given in this case are essentially and widely different, and we
do not regard the decision in that case as an authority adverse to the views
which we here announce.   Our understanding of the rule is, that when
the evidence for the State has established beyond a reasonable doubt that
defendant was present and participated in the commission of an offense,
and is guilty as charged, he may rebut the case made by the State by proof
of an *alibi*, but unless he makes such proof, or proves some other matter
which will exculpate him, or raise in the minds of the jury a reasonable
doubt of his guilt, his conviction must follow.   It is not required, in
order to entitle a defendant to an acquittal upon the defense of *alibi*, that
such defense should be established beyond a reasonable doubt.   The rule
is, that if the evidence adduced in the case, whether in behalf of the State
or of the defendant, engenders in the minds of the jury a reasonable
doubt as to defendant's presence at the time and place of the commission
of the offense, the defendant is entitled to an acquittal.   We do not un-
derstand the charge under consideration as shifting the burden of proof
from the State to the defendant.   It does not instruct that the burden
of proving an *alibi* is upon the defendant, or in any way intimate that
he must make such proof.   It simply and clearly states the rules of the
law as to the effect of such proof.   This view does not conflict with the
decisions of this court in Humphries v. The State, 18 Texas Court of
Appeals, 302, and Ayres v. The State, 21 Texas Court of Appeals, 399, as
will be seen by a careful analysis of those cases.   We can not conceive

that the charge in question could in any way have misled the jury to the prejudice of the defendant. We think it a correct charge, and sanctioned as such by reason, and by numerous authorities.

6. A majority of the court are of the opinion that it was not error to admit the testimony of the witness Barbee relating to the statements made to him by the witness Judy James. Defendant sought to cast discredit upon the witness Judy James by showing on her cross-examination that her testimony against the defendant was the result of fear, and influenced by a desire to shield herself and husband from being accused of the murder. Defendant himself, through his counsel, in his cross-examination of the witness Judy James with a view to impeaching her testimony, called forth, if not directly, yet legitimately, the statements objected to. The statements objected to were a *part of a conversation* brought out by the defendant, and the State was entitled to have the whole of said conversation. These statements were admissible under the express provision of our statute which expands the common law rule with reference to such evidence. Code Crim. Proc., art. 751; Willson's Crim. Stats., sec. 2481. It was doubtless under said provision of the statute that the trial judge admitted said testimony *as part of the conversation* between the two witnesses Barbee and Judy James drawn out by the defendant's counsel, and it being in our opinion clearly admissible under said provision, it is unnecessary that we should determine whether or not it was admissible for the purpose of corroborating the witness Judy James. We are inclined to the opinion, however, that it was admissible for that purpose also.

7. A majority of the court hold that it was not error to reject the testimony of the defendant's witness Peareson as to the litigation between defendant and the deceased. Said witness was permitted to and did testify about such facts relative to such litigation as were relevant to the issue and otherwise competent. But the other matters sought to be elicited from said witness were not admissible under any rule of evidence with which we are familiar. They were declarations made by defendant to his counsel, and advice given to him by his counsel. Such testimony must be regarded as in the nature of self-serving and incompetent in behalf of the defendant.

8. There are numerous other assignments of error which we do not discuss because we deem them unimportant and without substantial merit. We have found no error in the conviction. We think the evidence supports it. It was the province of the jury to weigh the evidence and pass upon the credibility of the witnesses, and accepting as true the evidence adduced by the State, there can be no question of the defendant's guilt of a most atrocious murder.

The judgment is affirmed.

*Affirmed.*

HURT, JUDGE, DISSENTING.—This is a conviction for murder of the first degree, the penalty fixed being confinement in the penitentiary for life.

Appellant makes twenty-six assignments of error. I have carefully examined each in connection with the·brief for the State and the record. I desire to notice in this opinion only such of them as I deem to be of serious character, remarking that the points made and not discussed are held to be, if errors at all, not reversible errors. I will not take up the assignments in the order presented in counsel's brief.

David James and his wife Judy were the tenants of appellant, and occupied a house of two rooms. In the absence of David, Judy being at home, Mrs. Brown, the deceased, and her son moved into the house, occupying one room, without the consent of any person. Several days after this, on the 7th day of December, 1887, about eight o'clock at night, three men, one being Henry Allen, broke open the door to the room occupied by Mrs. Brown and her son, seized and carried them off. Both were tied before they were taken from the house. On the next day, about a mile west of David James's house, on the prairie, Mrs. Brown and her son were found. They were dead, having been killed by gun shot or pistol wounds, or with some sharp instrument, or both.

The State relied (1) upon motive; (2) slight physical circumstances attending the homicide; (3) positive evidence to the identity of appellant as one of three who carried the deceased and her son from the house of David James; (4) the opinion of David James as to the similarity in shape and movements in appellant and one of the party which carried off Mrs. Brown and her son; (5) the dog matter. There may be other circumstances relied upon, but the above constitute the main facts for the prosecution.

To show that David and Judy James were mistaken or swore falsely, appellant introduced several witnesses by whom he proved that he was not at James's house when Mrs. Brown and her son were taken away, but that he was at the house of J. C. Cooper, who lived about twelve or fourteen miles from James's.

Now, under the facts of this case, the only method or means by which appellant could completely meet or cast a doubt upon the State's case was such proof, which is commonly known and called proof of an *alibi*. This being the case, it was of the first importance that there should be no error in the charge of the court upon this subject. Counsel for appellant in their ninth assignment of error complain, and I think justly, of the charge upon this subject.

The court instructed the jury as follows: "Amongst other defenses interposed in this case by the defendant, is what is known in legal phraseology as an *alibi*—that is, that if deceased was killed as alleged, the defendant was at the time of such killing at another and different place from that at which such killing was done, and therefore was not and

·could not have been the person who killed deceased, if she was killed. Now, if the evidence raises in your mind a reasonable doubt as to the presence of the defendant at the place where the deceased was killed (if killed) at the time of such killing, then you should acquit the defendant." This charge was excepted to at the time.

I have two objections to this charge: (1) It is wrong to instruct the jury that the defendant interposes an *alibi* as a *defense*, because an *alibi* is no defense at all, in any other sense than as rebutting evidence, tending to disprove the facts relied on by the State for conviction, or as evidence tending to cast or create a reasonable doubt of the truth of the facts relied on by the State for conviction.

Let us illustrate: A is charged with murder. B and C were present at the homicide. They swear to facts which make out a case of murder. D is also present, and swears to facts which, if true, defeat murder, or which might create a reasonable doubt in the minds of the jury as to the truth of the case as made by the testimony of B and C. The facts sworn to by D would be a defense in one sense, and in the same sense would an *alibi* be a defense—both being an attack upon the case as made by the testimony for the State, and in no other sense are they defenses. The danger to the accused from a charge telling the jury that an *alibi* is a defense is this: It is calculated to impress the jury with the idea that the *alibi* is a separate and distinct issue presented by defendant for solution by the jury, and this being so, the jury will naturally hold the accused to proof of his plea, whereas the correct principle requires the charge to be so framed as to present but one issue, i. e., did the appellant kill and murder Mrs. Brown?

(2) The charge defines an *alibi* thus: "Amongst other defenses interposed in this case by the defendant is what is known in legal phraseology as an *alibi*—that is, that if the deceased was killed as alleged, the defendant was at the time of such killing at another and different place from that at which said killing was done, and therefore was not, and *could not* have been the person who killed deceased," etc.

In treating of *alibi* some of the books state that the accused who pleads ·or relies upon it must prove it; that the burden is placed upon the accused, and he must prove that it was impossible for him to have committed the offense, because he was at so great a distance therefrom. The rule casting the burden of proof upon the defendant is most emphatically repudiated by our Supreme Court in Walker v. The State, 42 Texas, 360. The false theory or principle which places the burden to prove *alibi* upon the accused (which no doubt rests upon the idea that *alibi* is a separate and distinct issue in the case), is the natural parent of that rule which requires the accused to prove that it was *impossible* for him to have been at the place where the offense was committed. Both of these rules rest upon the same reasons, and in each instance the reasons are fallacious.

Now, in the charge under discussion, the court defines an *alibi* so as to require the proof thereof to show that the appellant was at a different place from that of the killing, and that appellant was not, and *could not* have been the person who killed the deceased. This is equivalent to requiring the proof to show that it was impossible for the accused to have been at the place of the homicide. This is wrong, because here is a question of probabilities. The evidence in support of an *alibi* may not show that it was impossible for the accused to have been at the place of the offense, and yet be such as to create a reasonable doubt as to his presence. The rule would reject all evidence of *alibi* except that tending to show that the accused *could not have been present*.

But it is urged by counsel representing the State that the charge upon this and all other questions should be construed as a whole, and that as the court instructed the jury that "if the evidence raised a reasonable doubt in their minds as to the presence of the defendant they should acquit." This instruction, while correct, does not extract the vice from the charge even when tested as a whole. Why? (1) Because, as above stated, the charge is so framed as to impress the jury with the idea that an *alibi* is a separate and distinct issue, with the burden on appellant to prove it. (2) The jury might solve the doubt against the appellant by holding from the evidence bearing upon the *alibi* that it was not *impossible* for the appellant to have been present and to have killed deceased.

The State relied upon two matters as motive moving appellant to kill the deceased: (1) That deceased and her son, without authority and by force, entered and took possession of appellant's house. (2) That appellant and Mrs. Brown had been and were then in litigation about the title to land. Evidence supporting both of these matters was introduced by the State to show motive.

Appellant to meet the second ground introduced as a witness P. E. Pearson, who was and had been for years the attorney for appellant in the land suit. By this witness appellant proposed to prove facts which would tend to show the state of defendant's mind concerning the said litigation—his knowledge of the same as gained from his attorney, the witness. The facts proposed, if true, tending strongly to eliminate this litigation from the case as a motive for the murder, the court in my opinion erred in rejecting them. Preston v. The State, 8 Texas Ct. App., 30; Bouldin v. The State, 8 Texas Ct. App., 332; Washington v. The State, 8 Texas Ct. App., 377; Noftsinger v. The State, 7 Texas Ct. App., 301; Cooper v. The State, 19 Texas, 443; Burns v. The State, 41 Texas, 351; Burrill's Cir. Ev., 466; Roscoe's Crim. Ev., 18, 19.

In a case depending upon circumstantial evidence the mind seeks to explore every possible source from which any light, however feeble, may be derived. If this be a sound and just rule for the prosecution, it should be for the accused.

Counsel for the State insist in reply to this matter "that the witness. Peareson had stated all that could be of any consequence regarding the suit, and the questions asked him were wholly incompetent for any purpose." I have compared the bill of exceptions with the testimony of Peareson as found in the statement of facts, and find that some important. matter was rejected by the court at the instance of the State. Among them are these:

Question: "State to the jury whether or no Mr. Gallaher was advised by you as to the condition of his title and the prospects as to the result. of his suit?" By the answer the appellant proposed to prove that the attorney had advised him that there was no doubt as to his title to all the land he claimed.

Again: "State whether or not after that suit was brought and before Mrs. Brown was killed, Mr. Gallaher, through you as his attorney and through Colonel Dennis, did not offer to let Mrs. Brown have all the land she had any title to?" Answer: "He did."

"Is it not a fact that when the offer was made to her in court that her lawyers and the judge presiding advised her to accept?" To which question the witness would have answered, that being of counsel for Gallaher he and his associate advised him that there was no doubt as to his title to all the land which he claimed; that in open court, as counsel for Gallaher, he and his associate counsel offered to permit Mrs. Brown to take judgment for 200 and odd acres of land claimed by her; that that was all the records showed she was entitled to; that her own counsel and the presiding judge advised her to accept the offer; that Gallaher was advised by his counsel that there was no doubt of his holding all the land claimed by her; that there was no cause to doubt the result, and that he was fully satisfied he would hold it, and did not express nor seem to feel any anxiety about the case, and that he did not in any way delay the case.

Under the circumstances of this case I am clearly of the opinion that. these facts were admissible, and that it was error to reject them.

A bill of exceptions duly saved by defendant's counsel shows: "J. G. Barbee, a witness for the State, was asked on cross-examination by the defendant's counsel if he, witness, did not say to Judy James that her husband's neck was in danger if she did not tell what she knew." To which Barbee answered, "I do not know that I used language as strong as that, but I told her she was in a critical situation; that the parties had been taken from her house and that she ought to know something about it. I used words to the effect that if she did not tell what she knew she and her husband were in danger. I can not recollect my words, but my language was to that effect." Thereafter, on re-examination of the said Barbee by the State, the State's counsel said to the witness, "You were asked by the defendant's counsel if you did not tell this woman, Judy James, that she and her husband were in great danger; that she ought

to tell what she knew about it, and that she was bound to know. I will ask you what she said in reply?" The defendant objected upon the ground that the testimony sought to be elicited was hearsay and irrelevant, and upon the further ground that the indictment showed that she (Judy James) was a witness for the State in the case. The State's counsel reiterating, said to the witness Barbee, "I asked you when you made that statement to her what her reply was, and what information she gave you?"

The objection made by defendant was overruled for the reason that the testimony was admissible in connection with the answers of the witness Barbee drawn out by defendant's counsel on the cross-examination of the witness on the same subject, and the witness was thereupon permitted to answer as follows: "Her reply was something to this effect: that she was afraid to state it out there in that crowd; that Mr. Gallaher was one of the men; that she heard the shots over there in the prairie (pointing the direction to witness); that they (she and her husband) were afraid to go out there to see, and that they had not been out there." The witness further said that "there was no one but her and me present when this conversation occurred; but shortly afterward Mr. Jones, the sheriff of Wharton County, came and we had an interview with her."

This testimony, in my opinion, was not admissible upon any ground. But it is contended by counsel for the State that it was a part of the conversation between Judy James and Barbee. But the questions propounded by counsel for appellant did not seek to elicit this conversation, nor were they so framed. Barbee, at the instance of the defense, did not state one word that Judy James said to him, Barbee. It is true that defendant sought to show by Barbee that undue influences may have induced her to swear that Gallaher was one of the party which carried off the deceased and her son. Conceding this, the State could show that she had made the same statement before such influences were applied. This could be done to support her, and to refute the inference that she was induced to swear as she did by such influences.

But her statements made after the influences had been applied to her were not admissible.

Upon this subject Mr. Wharton says: "When a witness is assailed on the ground that he narrated the facts differently on former occasions, it is ordinarily incompetent to sustain him by proof that on other occasions his statements were in harmony with those made on the trial. Thus, the declarations of a complainant in bastardy, whether made before or after her formal accusation upon oath as to the paternity of her child, have been held inadmissible in evidence, when offered by her either to show constancy or to strengthen her credit, since they have no tendency to do either. They are no proof, such are the reasons, that entirely different statements may not have been made at other times, and are therefore no

evidence of constancy in the accusation; and if the sworn statements are of doubtful credibility, those made without the sanction of an oath or its equivalent can not corroborate them.   On the other hand, where the opposing case is that the witness testified under corrupt motives, or where the impeaching evidence goes to charge the witness with a recent fabrication of his testimony, it is but proper that such evidence should be rebutted.   It has consequently been ruled that statements made by the witness corroborating his evidence upon the trial, such statements being uttered soon after the transaction in litigation, and at a time when the witness could not have been subjected to any disturbing influences, are competent when proof has been offered to impeach him, by showing that he had recently fabricated the narrative, or that he testified corruptly. The witness called to corroborate the impeached witness in this respect is usually confined to the fact that the statement was made to him (as stated by the impeached witness), and is not permitted to give the particulars of the statement." Wharton's Law of Evidence, sec. 570, vol. 1.

It will be seen from the above that the statement made by the witness corroborating his evidence on the trial must be uttered soon after the transaction occurred, or at least at a time when the witness could not have been subjected to any disturbing influences.   I believe no case can be found holding that a corroborating statement made after the disturbing influences were applied or may have been applied, is competent, admissible evidence.

Again, it will be observed that the rule cited from Wharton excludes the particulars of the statement.   He says:   "The witness called to corroborate the impeached witness in this respect is usually confined to the fact that the statement was made to him as shown by the impeached witness, and is not permitted to give the particulars of the statement." Rex v. Neville, 6 Cox C. C., 99.

But it is urged by the State that, conceding the incompetency of this evidence, there was no injury to appellant, because Judy James stated at the time deceased was taken from the house that appellant was one of the party, and hence she could not have been wrongfully influenced to thus swear upon the trial.

The testimony of this witness is voluminous, especially that given on cross-examination; and after a very careful examination of all that she says bearing upon the identity of appellant as one of the party who took deceased and her son from the house, I am impressed with the conviction that her testimony is very unsatisfactory.   It is true that she said to her husband when the three men came and passed through the kitchen into the main room in which Mrs. Brown and her son were, that "she believed one of the party was Mr. Gallaher."   She did not state to her husband that she knew it was Gallaher.   She was not positive, but believed him to be one of the party.   Now, when as told by Barbee, after she and her

husband had been indirectly threatened with prosecution for the murder, her husband being under arrest, she is not in doubt, but is positive that Gallaher was one of the party. This positive proof to a fact which, if true, seals the fate of the appellant, was obtained through Barbee improperly and illegally, without opportunity to cross-examine the witness Judy James when she was making her statement to Barbee. For when upon the trial she swears in a manner positively to appellant as one of the party, yet no honest candid man can read and analyze her testimony, that given in chief and upon cross-examination, and not be impressed with the conviction that she was not positive *then*—that is, when she saw the parties at the house when the deceased and her son were taken away— that Gallaher was one of the party. A careful examination of her evidence will impress an investigating mind that she was speculating, or at the most, simply believed him to be one of the party. Attention is specially called to her cross-examination bearing upon this question.

On the fatal night she believed merely. On the trial she is positive, with conflicting and unsatisfactory reasons for being so. To Barbee, positive. Now, under these circumstances I hold that this incompetent evidence may have had a serious effect upon the jury. They may, and probably did aid and strengthen Judy's testimony by that of Barbee. If she had been positive and clear as to the presence of appellant at the house and positive *then,* when the party was *there,* though inadmissible, her statement to Barbee might have been held harmless, though I find no authority for its admission, nor that, being admitted, it would be held without injury.

A number of witnesses swear to facts strongly supporting the theory of defendant, to-wit, that he was not at the place of the homicide. This was very important testimony, and if true, or had the effect to create a reasonable doubt of appellant's presence at the homicide, would or should have produced an acquittal. The State introduced a number of witnesses by whom several witnesses who swore to the *alibi* were impeached—their character for truth and veracity being bad in the opinion of the impeaching witnesses.

Counsel for appellant at the time objected to the charge of the court because, as alleged in their brief, it failed to instruct the jury that a witness sought to be impeached may still be believed by the jury, and that, notwithstanding such impeaching testimony, they are still the judges of the credibility of all the witnesses sought to be impeached.

Examining the bill of exceptions I find that the objection was as follows: "Because charging that the jury are the judges of the credibility of the witnesses, the charge fails in that connection to charge that this included the credibility of the witnesses sought to be impeached, and that, after considering all the testimony of all the witnesses, if the jury

had a reasonable doubt of the defendant's guilt he is entitled to be acquitted."

The learned judge instructed the jury as follows: "You are the sole judges of the weight of the evidence and the credibility of the witnesses." Evidently this means the weight of all the evidence, that given by the witnesses sought to be impeached as well as that given by the other witnesses. So with reference to the credibility of the witnesses, it means the credibility of all the witnesses. Notwithstanding the impeaching testimony, the jury were still the judges of the credibility of the witnesses; and this they were told in language sufficiently plain to leave no room to doubt. I have examined all the cases and authorities cited by counsel for appellant, but find no case or text which holds that if the court fails to charge the jury that in case there has been evidence tending to impeach a witness, yet they are still the judges of his credibility, would be error. Cases can be found in which, under peculiar circumstances, it has been held error to omit in the charge "that the jury are the judges of the weight of the evidence and credibility of the witnesses."

For the reasons mentioned above the judgment should be reversed.

[NOTE.—The foregoing opinions on the merits of the appeal, the majority of the court affirming the judgment, were delivered at the Austin Term, on the 28th day of June, 1889. The motion for rehearing was taken under advisement and transferred to Tyler, where, on the 7th day of December, 1889, by the same division of the court, the motion was overruled, in the opinions which follow below. The case is now reported under the Tyler number, but the record appertains to, and is on file at the Galveston branch.—REPORTER.]

## ON MOTION FOR REHEARING.

WILLSON, JUDGE.—After considering the very able arguments and briefs of counsel for defendant on this motion, and after a careful and thorough re-examination and reconsideration of the record, a majority of the court adhere to their views expressed in their former opinion, and hold that there is no error in the conviction for which it should be set aside.

It would be unprofitable, we think, to enter upon an elaborate discussion of the questions determined in our former opinion. We will, however, add some further remarks in support of our views heretofore stated.

1. As to the definition of "malice" given in the charge of the court. It was well said by Judge Clark in Harris v. The State, 8 Texas Court of Appeals, 90, that "a perfectly exact and satisfactory definition of that term (malice), signifying its legal acceptation in a form at once clear and concise, has been often attempted, but with no very satisfactory perma-

nent result.   The differing minds of different courts have employed different terms and language in an attempt to convey substantially the same meaning; and while a general similarity is apparent in all the definitions, the legal mind has not yet crystallized the substance of the term into a terse sentence readily comprehensible by the average juror." And it was held that while the definition of malice contained in the charge given in that case was not exact to a critical nicety, it was substantially sufficient, as it enabled the jury to distinguish the legal meaning of the term in contradistinction to its ordinary import. In the subsequent case of McKinney v. The State, 8 Texas Court of Appeals, 626, the definition before the court was precisely the one objected to in this case, and the objection urged to it was the same—that is, that it omitted the word "extenuation" after the words "justification or excuse." This court held the definition sufficient, remarking that it was a fuller definition than the one held sufficient in the Harris case, *supra*. In Lander v. The State, 12 Texas, 462, a definition of malice, given by Russell, in his work on Crimes, is cited with approval. It is as follows: "Malice in its legal sense denotes a wrongful act done intentionally, without just cause or excuse." This definition is substantially the same as was given in this case. We do not claim that the definition of malice given in this case is critically correct and absolutely perfect. What we hold is, that it is substantially correct and sufficient. That it enabled the jury to distinguish between the legal and common signification of the term, and this was all that the law requires in a definition of malice in such case. The definition of "malice" given in McCoy v. The State, 25 Texas, 33, and approved by this court in Tooney v. The State, 5 Texas Court of Appeals, 163, is, we freely admit, a more complete one than was given in this case.

Again, in considering the sufficiency of the definition of malice, we should look to other portions of the charge explaining malice. Immediately following the definition objected to is an explanation of express malice as follows: "Express malice aforethought is where one with a sedate and deliberate mind and formed design unlawfully kills another," etc. It required this kind of malice to constitute murder in the first degree, and this explanation of express malice in and of itself fully expresses the legal meaning of malice, for if the killing was unlawful, and if the slayer committed the act deliberately, and in pursuance of a formed design to kill, the killing would be upon malice. There could be neither justification, excuse, nor extenuation for the act.

2.   As to the charge on *alibi*, as stated in our former opinion, it is substantially the same as one approved by this court in Walker v. The State, 6 Texas Court of Appeals, 567. We are unable to appreciate the soundness of the objections made to this charge. It is urged that the charge is wrong because it requires the jury to believe, in order to acquit the defendant, that he was not and *could not* have been the person who killed the deceased.

The use of the words *could not*, it is urged, mean, in effect, that it was impossible for the defendant to have committed the murder.    We do not think this is a fair criticism upon the charge, or that a jury would give to it such meaning as counsel for defendant suggest might be given to it. The charge upon this matter should be read and considered in its entirety, and when this is done, it is not obnoxious to the criticisms made upon it.    Following the sentence in which the words "could not" occur, the charge proceeds, "Now, if the evidence raises in your minds a reasonable doubt as to the presence of the defendant at the place where the deceased was killed (if killed) at the time of such killing, then you should acquit the defendant." It seems to us that no jury of ordinary intelligence would understand from this charge that it devolved upon the defendant to prove that it was *impossible* for him to have been present at the time and place of the killing; or that the burden of proving an *alibi* rested upon the defendant.    We think the charge states the law plainly and correctly, and that it could not reasonably have been misunderstood by the jury.    The charge is not as unfavorable to the defendant as many authorities would justify.    It is held by good authority that, while an *alibi* need not be proved to that extent that it absolutely precludes the possibility of the defendant's presence at the time and place of the commission of the offense, yet the range of the evidence must be such as reasonably to exclude the *possibility* of such presence.    1 Eng. and Am. Ency'p. of Law, p. 456.    But the charge is more liberal to the defendant, as is also the rule declared by the decisions in this State.    It is only required by said charge, and by the rule of law of this State, that the jury should, from all the evidence in the case, entertain a reasonable doubt of the presence of the defendant at the time and place of the commission of the offense.    If the jury have such reasonable doubt, it entitles the defendant to an acquittal, although the evidence may not exclude reasonably the *possibility* of such presence.    In addition to the authorities heretofore cited relating to *alibi*, we refer to an able and exhaustive article entitled "Cautionary Instructions in Criminal Cases" written by Seymour D. Thompson, and published in 10 Criminal Law Magazine, page 179, section 19, *et seq*.    That article cites and reviews many decisions relating to *alibi*, and states the rules deducible from them, and those rules are in accord with our views as expressed in this and our former opinion in this case.

An objection not heretofore made to the charge is presented by counsel for defendant on this motion.    It is to that portion of the explanation of express malice which states that a sedate and deliberate mind and formed design is evidenced by external circumstances discovering that inward intention, as lying in wait, etc.    The objection made is, in effect, that this portion of the charge is upon the weight of evidence, and virtually tells the jury that express malice is *proved* when any of the conditions enumer-

ated in the charge are shown to have existed.    This precise charge and objection thereto have heretofore been before this court and determined adversely to the objection, and we think correctly.₁    Sharpe v. The State, 17 Texas Ct. App., 486.

It is again urged on this motion that there was error in the admission of the testimony of the witness Barbee touching the declarations to him of the witness Judy James.    A majority of the court still entertain the opinion that this testimony was, under the circumstances, properly admitted.    Barbee was asked by defendant's counsel if he did not say to Judy James that her husband's neck was in danger if she did not tell what she knew about the murder?    Barbee answered that he told her something to that effect.    Counsel for the State thereupon asked Barbee to state what Judy James said to him in reply to what he had told her, and over the objection of defendant that her reply would be hearsay evidence, the court permitted Barbee to testify to the effect that she said in reply that she was afraid to tell what she knew about the murder, in the crowd, because Mr. Gallaher was one of the men; that she heard the shots in the prairie at the time of the murder, etc.    This testimony was held admissible by the trial judge upon the ground that it was drawn out by defendant's counsel on cross-examination of the witness Barbee on the same subject.    It is a provision of our statute that when part of a conversation is given in evidence by one party, the whole on the same subject may be inquired into by the other party.    Code Crim. Proc., art. 751. There was a conversation between the witness Barbee and the witness Judy James upon the subject of the murder, and the knowledge of facts possessed by Judy James relating to the murder.    Counsel for defendant in cross-examining Barbee put in evidence a part of that conversation—that is, what he said to Judy James.    The purpose of this was to affect the credibility of Judy James's testimony.    It could subserve no other purpose.    A *part* of the conversation having been put in evidence by the defendant, the State was entitled to have the *whole* thereof upon the same subject put in evidence.    Judy James's reply to what Barbee had said to her was a part of the same conversation, and was upon the same subject, that is the murder, and her knowledge of it; and further, her reply explained her reason for not sooner divulging the facts of the transaction within her knowledge.    A majority of the court entertain no doubt of the admissibility of said testimony.    In this connection we will say further, that this testimony having been drawn out by the defendant with the purpose of impeaching the credibility of the witness Judy James, it was not material error to omit an instruction to the jury as to the purpose of said testimony, directing that it could be considered for that purpose only.    The charge was not excepted to because of such omission, nor was an instruction upon this point requested.    If the admission of said testi-

mony was prejudicial to the defendant, he can not complain, because he drew it out and is alone responsible for its being in the case.

With regard to the proposed testimony of the witness Peareson, a majority of the court still hold that the trial judge did not err in his rulings. Said witness was permitted to testify to the facts connected with the land litigation between defendant and deceased in so far as said facts were pertinent and competent evidence. It was not competent for any purpose, we think, to prove by said witness the advice he gave as an attorney to the defendant in relation to the said litigation, or the defendant's opinion of his legal rights in said litigation, or the advice given by the judge and others to the deceased to accept a compromise offered her by Gallaher, etc. It seems to us that all the matters sought to be elicited by the questions which the court would not permit to be answered are incompetent as evidence for any purpose. They consist of the defendant's acts and opinions prior to the murder; of the opinion and advice of his counsel, and of the acts, opinions, and advice of others with reference to the land litigation. It is contended by counsel for defendant that this testimony was admissible as tending to show an absence of motive on the part of the defendant to commit the murder. We do not deny that it was the right of defendant to prove any fact or circumstance which would tend to show absence of motive on his part, but such proof must be made by legal, competent evidence. Acts and declarations of the defendant not being part of the *res gestæ* are not competent evidence in his behalf. Nor can we see upon what principle the opinions and advice of his counsel in the land suit could be held admissible evidence in his behalf. Suppose his attorney had advised him that he would certainly be defeated in the suit and would lose the land, would such testimony be admissible in behalf of the State? Certainly not. Then why should it be admitted in his behalf? We know of no rule or precedent which would admit such testimony. As to the advice given to the deceased to accept the compromise offered her by the defendant, and her refusal to accept such offer, that was matter wholly irrelevant, and if it could have any effect whatever, that effect would be prejudicial to the defendant, because it would show cause for malice against her on the part of the defendant.

It is insisted by counsel for defendant that the conviction should be set aside upon their twenty-fourth assignment of error, which is as follows:

"Because the court erred in permitting, to the prejudice of defendant's rights, the counsel for the State while re-examining the witness Judy James, to cause the defendant James Gallaher to stand up before the jury and put on his head a broad brimmed hat, and put over his face a handkerchief, and then thus exhibiting the defendant before the jury to ask Judy James if that was the way Gallaher looked at the time she saw him on the night of the murder, and in permitting Judy James to testify 'that was exactly the way he looked,' thus permitting and requiring the

defendant to testify against himself, to the material injury and prejudice of his rights."

This matter was not discussed in the former opinions delivered in this case, for the reason that we did not consider that it was presented properly—that is, by bill of exception. We are still of the opinion that under the practice in this State, the matter is of that character which should be presented by bill of exception. We will, however, in deference to the earnest insistance of counsel for the defendant, give our views upon the question. We do not understand that the defendant was "compelled to give evidence against himself." He was not required by the court to submit to the disguise and exhibition of himself before the jury. There was no compulsion used against him. He made no objection whatever to the disguise and exhibition of which he now complains. For aught that appears he not only consented to it, but may have been desirous of the test— willing to take the chances of it. He may have believed that the witness Judy James would fail to identify him when in such disguise, and so believing, may have been willing and anxious to have the test applied. How can it be said then that he was compelled to give evidence against himself? If he had objected to such test, and the court had required him to undergo it, a very different question would have been presented. Suppose counsel for the State had placed the defendant upon the witness stand, and had him sworn to give evidence in the case, and without objection on the part of the defendant, he proceeded to give evidence against himself, could he be heard to complain that he had been compelled to give evidence against himself? We think not. It was the privilege of the defendant to not give evidence against himself, but it was within his power, and was his right to waive such privilege, and having done so, he can not complain.

But it is contended that the mere proposal made by counsel for the State to make the test was error, which should reverse the judgment. There would be strength in this proposition if the defendant had interposed any objection to the proposal. He did not object, but acceded to the proposal, and voluntarily underwent the experiment, thus waiving, we think, his privilege, whatever that privilege may have been. We have found no authority and have been referred to none which holds that a defendant may not voluntarily give evidence against himself, or may not accede to a proposal to give evidence against himself. If, in this case, the defendant had declined to be disguised and exhibited, the court would doubtless have protected him in his constitutional right to be exempted from giving evidence against himself. As the matter is presented to us, and as we understand it from the record, no error is made apparent of which defendant can complain.

As to the sufficiency of the evidence to sustain the conviction, we have heretofore expressed our conclusion, and a re-examination of the facts has

not changed that conclusion.    The witness Judy James identified the defendant as one of the three parties who took the deceased from the house on the night of the murder.    There can be no question but that the murder was committed by those three parties.    Conceding that this conviction rests alone upon the testimony of Judy James, that testimony supports the conviction.    It was the exclusive province of the jury to pass upon her credibility, and this court can not question the truth of testimony when it has been credited by the jury and judge before whom it was given.    There is, it is true, much evidence which tends to show that the defendant was not present at the time and place of the murder.    We can not say that the conviction is unsupported by, contrary to, or against the weight of the evidence.

The motion for rehearing is overruled.

HURT, JUDGE, DISSENTING.—I desire to add some observations to what I have written upon two questions, as well as to notice some authorities.

And first as to the charge upon *alibi*.    In support of my views of this charge I cited no authorities in my original opinion, because I believed none were required.    In that opinion I stated that the charge was wrong because it is a question of probabilities.    Is this a correct proposition?  If it is, then evidently the charge is incorrect and was calculated to injure the cause of appellant, because the evidence on *alibi*, if true, does not show that it was impossible for the appellant to have been present, and this was urged by counsel for the State in argument before this court at Galveston.    But whether injurious or not, being excepted to at the time, we must reverse; and we have only alluded to the fact that counsel for the State urged that it was possible for appellant to have been present in order to emphasize the error.

Let us return to the position above assumed:    Must the proof show that the accused was not and could not have been present, or must it, under all the facts and circumstances in evidence, render it improbable; that is, so improbable as to raise a reasonable doubt of the truth of the State's case?    This last position must be sound, or *alibi* is a separate and distinct defense with the burden of its proof resting upon the accused.  This is the rule in some States, but not in this.    However, I do not desire to extend the discussion of this question, but to support my views by the following authorities:

In Galloway v. The State, 29 Indiana, 447, the court say:  "True, there is nothing in the averment to exclude the idea that he might have procured a conveyance after he separated from Galloway, but the time that would necessarily be consumed in doing so would be such as to render it *improbable* that he could have been at the robbery."    (Italics ours.)    In

exact accord with this case are the following: Stewart v. The People, 42 Mich., 225; Adams v. The State, 42 Ind., 374.

In Kaufman v. The State, 49 Indiana, 251, there being proof tending to establish *alibi,* the court gave the following charge: "The defendant having introduced evidence for the purpose of establishing an *alibi,* or, in other words, to show that he was not guilty for reason that he was at a different place, if he failed to cover the whole time necessary when the crime may have been committed, then you would be warranted in paying no attention to such testimony." Now, if the charge in the case before us is correct, then it follows inevitably that the above charge was correct, for if the proof of *alibi* must tend to show that it was impossible for the accused to have been present at the place of the crime, the evidence of *alibi,* failing to cover the whole time, is irrelevant and should have been excluded. But what said the court to the charge in the Kaufman case? Riddle, J., says: "As a rule of law this instruction is erroneous. An *alibi* is a legitimate defense, and if the evidence touching it was sufficient to raise a reasonable doubt of appellant's guilt in the minds of the jury, it should have been considered, although the *alibi* did not cover the whole time during which the crime was committed. Citing French v. The State, 12 Ind., 670; Adams v. The State, 42 Ind., 373; and Bines v. The State, 46 Ind., 311. Additional authorities could be cited, but I deem these sufficient to establish that the proposition is perfectly sound, to-wit, that in view of all the facts and circumstances in evidence, the proof of *alibi* must be such only as to render it so improbable that the accused was present as to raise a reasonable doubt of the truth of the State's case.

But it is replied that the court instructed the jury that "if the evidence raises in your minds a reasonable doubt as to the presence of the defendant at the place where the deceased was killed, at the time of such killing, then you should acquit the defendant." This is true. But by the first part of the instruction (the objectionable part) *alibi* is defined so as to render it unavailable to the defendant, unless the proof thereof makes it impossible for him to be present at the homicide; hence, as is so well said by counsel for appellant, a reasonable doubt as to presence predicated on this definition, is a reasonable doubt as to the character of presence defined—that is, the presence referred to and none other—a possible presence—the correlative of an impossibilty of presence.

Let us look at this subject in a practicable light. The jury are told, in effect, that unless the proof of *alibi* shows that appellant could not have been present, then such proof does not show an *alibi.* Now, then, they are told that if they have a reasonable doubt of presence arising from evidence they should acquit. The jury take both paragraphs under consideration. They inquire first what must the proof show in support of this defense? Answer: That it was impossible for defendant to have been present. Does it do this? It does not. What shall we do with this

defense? Ignore it, because he might have been present. Now, this conclusion and disposition of the appellant's defense, so called, is properly justified by their instructions. But a juror suggests that "we are instructed that if we have a doubt of the defendant's presence to acquit." "That is true," another juror replies, "but you must agree with us that the proof of *alibi* fails to show that it was impossible for him to be present, and if this is so, there is no *alibi* in the case, because his honor, the judge, thus defines an *alibi.*" To this it is replied: "That is true; but what about the doubt?" It is answered: "We have not reached the doubt yet, because we have no *alibi*—the proof failing to show that it was impossible for defendant to be present." Another juror enters the discussion and suggests that "we should construe these conflicting clauses together, and obey the whole instruction upon this point."

Now, to do this I say would be impossible. Why? Because if *alibi* is an impossible presence and the proof fails to show this, it is not in the case. If the jury should find from the evidence that it was not impossible for defendant to have been present, the reasonable doubt as to this defense would not be involved, for there is no *alibi* in the case.

By this, it is confidently believed, it is demonstrated that the two clauses in the charge on *alibi* are in direct conflict, and this being so, we can not tell which governed the jury in their finding upon this so called defense of *alibi.* Now then, what is the well settled rule of this court under such a state of the charge? If objected to at the time a reversal follows as of course. If not objected to, we look to the whole record and, injury probably resulting, the case is reversed. I will not stop to cite authority in support of these propositions, for this court has uniformly so held.

My brother Willson in his original opinion says of the charge on *alibi:* "It is almost a literal and is a substantial copy of the one approved by this court in Walker v. The State, 6 Texas Court of Appeals, 576. It has been approved by this court in numerous subsequent unreported cases." In the Walker case there was no objection reserved to the charge. The objection to the charge was that it was not sufficiently full, failing to explain the full meaning and legal effect of a defense of that kind. Judge Winkler, speaking for the court, simply says: "The charge objected to comes up to the requirements of a charge on *alibi* as laid down in Booth's case, especially when read in connection with what follows the paragraph complained of." My objection to the charge is, not that it was too meager, but that it states an incorrect proposition. This objection was not urged, and hence was not considered by the court, nor was it presented in the Booth case. But let us concede for argument that after full discussion such a charge was held sound. While this might be persuasive, still, if incorrect, we should not be governed by it and so perpetuate the error. That it is not correct to my mind is evident. That in cases unreported we have affirmed judgments in which the record con-

tained such a charge is true. But this could not be held an approval unless there has been objections to the charge at the time questioning its correctness upon the grounds now urged. If such be an approval, we have approved in the same way charges which were absurd, foolish, and against every principle of law.

In the opinion on this motion my brother Willson says: "The charge (upon *alibi*) is not as unfavorable to the defendant as many authorities would justify," citing authorities. This is an absolute fact, and an hundred cases, it may be, can be cited in support of its truth. I will give a case which fully supports him; a case well considered, the opinion being written by a profound judge. In The State v. Ward, 17 Atlantic Reporter, 483, Taft, J., speaking for the court, says: "Exceptions were reserved to the charge on the subject of *alibi*. The jury were told that if the proof of it did not outweigh the proof that he was at the place when the crime was committed it was not sufficient. In this statement there was no error." Here we have a charge not so favorable to the defendant as the one in this case.

Again, we have this proposition: "It is a defense resting on extraneous facts not arising out of the *res gestæ*, and the onus of proving it devolves upon the respondent who alleges it." Is this law in this State? I think not. The judge proceeds: "The burden being upon him, some courts hold that the evidence must exclude the possibility of the prisoner having been at the scene of the crime so as to prove the *alibi* beyond a reasonable doubt; others, that it must preponderate or outweigh that for the State. The latter was the rule adopted in the court below, and we think correctly." Here we have law very unfavorable for the defendant, but who will assert that such are principles and rules of law in this State?

Continuing the opinion, the judge says: "Had the above been all the charge upon *alibi* evidence, there would be just grounds of complaint." What! Complain that the law has been correctly charged? This is strange, unless the correct law needs qualification or modification. Now here we have the qualification: "For while the evidence might not have been sufficient to establish an *alibi*, it was not therefore to be discarded, laid out of the case and not considered by the jury, which has been the error in many of the American cases." It is evident to a logical mind that this qualification is an absolute retraction and repudiation of the rule which requires the accused to establish his *alibi* by a preponderance of the testimony, which rule is approved by the court and held to be sound.

The opinion proceeds: "After this instruction it was the duty of the court to go further, and tell the jury that if the *alibi* was not so established, evidence of it was not to be excluded from the case, but that it should be considered with the other evidence; and if upon the whole, including that in relation to the *alibi*, there was a reasonable doubt of

the respondent's guilt, he was entitled to an acquittal." Now, these propositions are diametrically opposed the one to the other. Let us place them side by side. First—The accused must prove his *alibi* by a preponderance of evidence. Second—Though the evidence does not preponderate in favor of his *alibi*, yet, if it raises a reasonable doubt of his guilt when considered in connection with the other evidence, he should be acquitted. Now, I have this question to propound: If evidence of less probative force than that required to outweigh the evidence for the State (showing presence) will be sufficient to raise a doubt of guilt, why require the *alibi* to be established by proof outweighing that for the State?

In passing, I desire to say that when the burden is on the accused to prove a fact, the doctrine of reasonable doubt can not possibly apply in his favor, unless in every case proof of such fact, to create the doubt, preponderates in its favor, for if proof of less force will be permitted to create the doubt, the burden is not discharged by him, and hence is not on him. It would be a rare thing to find an opinion containing (on one question) more inconsistencies than this in the Ward case. I have referred to it simply for the purpose of supporting Judge Willson's observation to the effect that authorities could be found much more unfavorable to the accused than the rule stated in this case. But they are not authority in this State.

I desire now to make some additional observations on the question presented by the fifteenth assignment of error, relating to the testimony of Barbee.

In response to questions propounded by counsel for defendant on cross-examination, the object of which questions being evidently to show the animus of the witness Barbee, and also to show an inducement or reason for Judy James's testimony against the defendant, Barbee, over the objection of defendant, was permitted to state that Judy James stated to him that defendant was one of the men who took the deceased from her house, etc. As I have said in my original opinion, the statement of Judy James was not admissible.

Judge Willson, in his original opinion, contends that the statement was a part of a conversation between Barbee and Judy, and that it was drawn out by counsel for the defendant. The questions were not calculated nor intended to put in evidence this statement. No conversation was sought or elicited by the questions. What Barbee said and did to Judy was sought and elicited, and nothing more. But it is contended that the statement of Judy was admissible under the statute (Code Crim. Proc., art. 751), which reads: "When part of an act, declaration, or conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read all other letters on the same subject between the same parties may be given. And when a detailed act, declaration, conversation, or writing is given

in evidence, any other act, declaration, or writing which is necessary to make it fully understood, or to explain the same, may also be given in evidence."

Now, if the defendant had given in evidence a part of the declarations and acts of Barbee, then the State would have been entitled (if it was not complete) to the whole of the act or declaration:., Or, if part of a conversation between Barbee and Judy James had been given in evidence, the State would have been entitled to all of the conversation. Or, if the declarations or acts of Barbee could not be understood without Judy's replies, then they may have been admissible. If a detailed act, declaration, or conversation is given in evidence, any other act, declaration, or conversation which is necessary to make it fully understood is admissible. Barbee was perfectly understood. There is no contention on this point. Hence this provision does not apply. If Judy's statement was admissible, it was admissible by virtue of the statute, and it was admissible whether she was a witness in the case or not, and whether she was living or dead at the time of the trial. I now propose to give an illustration which will demonstrate the fallacy of the position assumed to sustain the competency of this statement.

A is on trial for theft. B is introduced as a witness for A. He swears to facts which, if true, and are believed by the jury, will defeat the prosecution. To show his animus and corruption the State asks him if he did not approach Mr. C and attempt to persuade him to swear to certain facts establishing an *alibi?* if he did not propose to give C $500 to swear. to these facts? B answers that he did, whereupon counsel for the defendant asks him what reply C made. B answers that C stated that he knew the time when the property was taken; that A was not the thief; that A was not at the place of the theft; that A was an honest man, and that the witnesses for the prosecution were perjured scoundrels, unworthy of belief, etc.

Now, as before stated, if Judy James's statement was competent evidence, it was so by virtue of the statute, and in fact could be used to prove the guilt of defendant because competent evidence. This being the case, the fact that she testified in the case has nothing whatever to do with the question, for if indeed the appellant introduced the conversation, declaration, or acts of Judy, he is bound by them. But did he introduce them? Evidently he did not.

But take the case illustrated. Will it be contended that the statements of C could be used against the State as evidence of the facts there stated? By no means. The foregoing is all I desire to add to what I have already said upon this subject.

On the other branch of this question I desire to say that no case or authority has been found authorizing the introduction of similar statements, if the statements were made after the disturbing influence was

applied. All the authorities, so far as my research extends, hold that. when admissible at all, they must have been made prior to the application of the disturbing influences. 2 Phill. on Ev., 973, and note on same page; 1 Greenl. Ev., 469.

I am still of the opinion that the judgment in this case should be reversed, and that the motion should be granted.

*Motion overruled.*

Judges all present, with Hurt, J., dissenting.